STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles WILLIAMS, Defendant-Appellant.

Supreme Court

*No. 90–1459–CR. Oral argument March 23, 1992.—Decided June 17, 1992.*

(Also reported in 485 N.W.2d 42.)

For the defendant-appellant there were briefs and oral argument by *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

CALLOW, WILLIAM G., J. This appeal arises out of a forcible, unannounced entry by police into the

defendant's home to execute a search warrant for illegal drugs where police had knowledge that the defendant possessed a firearm. The circuit court convicted the defendant for possession of illegal drugs with intent to deliver. The defendant appealed the conviction to the court of appeals based on the invalidity of the police entry into his home and the inadmissibility of certain expert opinion testimony. The court of appeals certified the case to us and we accepted the certification pursuant to sec. (Rule) 809.61, Stats. We affirm the judgment of the circuit court.

There are two issues on appeal. The first issue is whether police knowledge of the existence of illegal drugs and firearms excuses compliance with the announcement requirements of the Fourth Amendment to the United States Constitution[1] and art. I, sec. 11 of the Wisconsin Constitution[2] in the effectuation of a search warrant. The second issue concerns the admissibility of expert witness opinion testimony on the issue of whether, based on evidence seized from the defendant's home, the residents of the home were engaged in the sale of illegal drugs.

---

[1]The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[2]Article I, sec. 11 of the Wisconsin Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The relevant facts are not in dispute. City of Madison police officers received information from a reliable informant that defendant-appellant Charles Williams was selling illegal drugs out of his apartment. The informant further told police that Williams possessed a gun and carried it with him. According to the informant, Williams carried the gun because he had previously been threatened by another drug dealer. The officers performed a background check on Williams which revealed that Williams had been convicted of felony battery in the state of Illinois, and had a history of narcotics and burglary violations.

On December 1, 1987, Detective Tony Olivas of the Metro Narcotics Unit sought a search warrant from Judge William Byrne to search Williams' apartment based on the information described above. For the safety of the officers executing the search warrant, Detective Olivas desired a search warrant that contained a no-knock authorization allowing the officers to enter the apartment without having to knock and announce their presence. There is no indication from the face of the search warrant or the record in this case that Judge Byrne denied the no-knock request. However, for unknown reasons, the resulting search warrant did not contain a no-knock authorization. Detective Olivas mistakenly believed that he had obtained a search warrant with a no-knock authorization.

Approximately one hour after receiving the search warrant, Detective Olivas and seven other members of the Metro Narcotics Unit proceeded to Williams' apartment to execute the search warrant. The officers first tried to gain entry into the apartment by contacting Williams on the apartment intercom system to entice him into a drug transaction. Williams refused to open the door. The officers subsequently broke the door in

with a sledgehammer, shouting "police" as they entered the apartment. Once inside, the officers secured the premises. Williams was found standing within several feet of his jacket that the officers later discovered contained his loaded gun. During the course of the search, the officers discovered large quantities of cocaine and marijuana, assorted drug paraphernalia which included several weight scales, packaging material and diluents, two loaded guns, and a large amount of cash.

Based upon this evidence, Williams was charged with possession of cocaine with intent to deliver in violation of secs. 161.41(1m)(b) and 161.16(2)(b)1., Stats.,[3] and possession of marijuana with intent to deliver in violation of secs. 161.41(1m)(b) and 161.14(4)(t).[4] Wil-

---

[3]Section 161.16, Stats., provides in relevant part:

**161.16 Schedule II. (1)** INCLUDED SUBSTANCES. The controlled substances listed in this section are included in schedule II.

. . ..

(2)(b)1. Cocaine, except as specified in s. 161.14(7)(a).

Section 161.41(1m), Stats., provides in relevant part:

**161.41 Prohibited acts A—Penalties.**

**(1m)** Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation.

[4]Section 161.14, Stats., provides in relevant part:

**161.14 Schedule I. (1)** INCLUDED SUBSTANCES. The controlled substances listed in this section are included in schedule I.

. . ..

(4)(t) Tetrahydrocannabinols, commonly known as "THC," in any form including tetrahydrocannabinols contained in marijuana, obtained from marijuana or chemically synthesized. . . .

liams filed a motion to suppress the evidence received in the search. Following an evidentiary hearing, Judge Angela Bartell denied the motion and held that the circumstances of this case justified the no-knock entry by the officers. Judge Bartell's decision was based on the facts that the police had specific information that the defendant was armed, had drugs, and had been previously convicted of battery.

During the trial, the prosecution called Richard Raemisch to testify as an expert narcotics officer. Raemisch was an Assistant United States Attorney at the time of trial and a former detective in the Dane County sheriff's department which was one of the departments involved in the search in this case. Over objection, Raemisch testified that, based on the evidence seized from Williams' apartment, he opined that the residents of the apartment were involved in the sale of illegal drugs. Without objection, similar testimony was elicited from Officer David Mahoney.

Williams was convicted on both counts and sentenced to five years in prison. The defendant filed a motion for post-conviction relief under sec. 809.30, Stats., based on the invalidity of the police entry into his apartment and the inadmissibility of the expert testimony of Raemisch. Judge Bartell denied the defendant's motion for post-conviction relief. Williams appealed the judgment of conviction of the circuit court. The court of appeals certified the case to this court. We accepted the certification and now affirm the judgment of the circuit court.

## I.

Williams first argues that police may dispense with the knock and announce requirement only when they are

confronted with exigent circumstances and "particularized grounds" justifying unannounced entry. For this proposition, he cites *State v. Cleveland,* 118 Wis. 2d 615, 630, 348 N.W.2d 512 (1984). Williams contends that the mere presence of drugs or guns should not justify unannounced entry. He asserts that due to the danger of surprising someone in their own home, "where police are aware of [firearms], the case for requiring them to give notice of their authority and purpose becomes more rather than less compelling." *People v. Dumas,* 512 P.2d 1208, 1213 (Cal. 1983). Therefore, he requests this court to adopt the rule that police knowledge of firearms excuses compliance with the announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with ordinary announcements. Williams believes the no-knock search of his apartment was constitutionally unreasonable because nothing indicated that he would use the gun against police.

In response, the State relies on *State v. Watkinson,* 161 Wis. 2d 750, 468 N.W.2d 763 (Ct. App. 1991), for the proposition that the presence of drugs and guns is *per se* sufficient to satisfy the "particular grounds" requirement of *Cleveland.* In *Watkinson,* the court of appeals held that when police have knowledge that a drug dealer is armed, an unannounced entry to execute a search warrant is reasonable. *Watkinson,* 161 Wis. 2d at 757. The State further contends that requiring police to have particularized grounds to believe an armed drug dealer would use his weapon against them subjects the officers to an unreasonable risk of bodily harm and ignores the realities of drug trafficking in the 1990s.

■

The constitutional reasonableness of a search and seizure is a question of law. *State v. Jackson,* 147 Wis. 2d

824, 829, 434 N.W.2d 386 (1989). Accordingly, this court shall review this issue independently and without deference to the lower courts. *Id.*

■

The Fourth Amendment to the United States Constitution and Wisconsin Constitution art. I, sec. 11 protect the security of people "in their persons, houses, papers, and effects against unreasonable searches and seizures." While this court may interpret Art. I, sec. 11 more strictly than the United States Supreme Court interprets the Fourth Amendment, it has consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment. *See State v. Guzman,* 166 Wis. 2d 577, 586-87, 480 N.W.2d 446 (1992).

■

The Fourth Amendment proscription against unreasonable searches and seizures not only requires that there be probable cause to undertake the search or make the seizure but also that the search or seizure be conducted in a reasonable manner. *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985). The rule of announcement, which requires police officers seeking to enter a dwelling in execution of a search warrant to announce their identity and allow time for the door to be opened voluntarily, addresses the manner in which a legitimate governmental intrusion is to take place. *Cleveland,* 118 Wis. 2d at 622-23. The announcement rule has a common-law heritage and serves three important purposes: (1) protecting the individual's privacy in the home; (2) decreasing the potential for violence by alerting the resident that the officer is legitimately on the premises; and (3) preventing the physical destruction of property by giving the

resident the opportunity to admit the officer voluntarily. *Id.* at 623.

While the United States Supreme Court has not yet detailed the minimum constitutional requirements for the manner in which a search warrant is executed, it is generally recognized that the knock and announce rule may be excused only if "exigent circumstances" exist to justify the no-knock entry. *See Cleveland,* 118 Wis. 2d at 624 and *United States v. Singer,* 943 F.2d 758, 762 (7th Cir. 1991). Exigent circumstances "include a reasonable belief that announcement of police presence would endanger the safety of the police or others, or a reasonable belief that unannounced entry is required to prevent the destruction of evidence." *Cleveland,* 118 Wis. 2d at 624 (citing *Ker v. California,* 374 U.S. 23, 47 (1963) (Brennan, J., dissenting)).

In *Cleveland,* this court held that the no-knock entry in execution of a search warrant was constitutionally unreasonable where the law enforcement officers lacked particular grounds to give them reasonable cause to believe that the evidence, which consisted of illegal drugs, would be destroyed. *Id.* at 634. This court rejected a blanket approach in narcotics cases that the nature of the evidence itself, without more, permits an unannounced entry. *Id.* at 628. In a footnote, the Court noted that guns alone would be insufficient to justify a no-knock entry by police. *Id.* at 631 n.16. There was no indication in *Cleveland* that the suspected drug dealers were armed or had taken other security precautions that would place officers in danger if they announced their presence before entering. The present case is distinguishable from *Cleveland* because it is characterized by

982

police knowledge that the suspected drug dealer is armed and has a history of violent behavior.

■ The circumstances in *Singer* are strikingly similar to those in the present case. In *Singer,* police officers received an anonymous tip that Singer was selling illegal drugs out of his home, possessed a gun and had made threats. Following further investigation, the officers obtained a no-knock search warrant and executed an unannounced entry of Singer's home. Singer filed a motion to suppress the evidence seized in the search on the grounds that the execution of the search was constitutionally unreasonable. The *Singer* court held that the no-knock search by police did not violate the Fourth Amendment because the search warrant was supported by probable cause and the no-knock entry was justified by the existence of exigent circumstances. *Singer,* 943 F.2d at 764. In so holding, the *Singer* court reasoned that "it is a reasonable belief that a person in possession of both firearms and large quantities of drugs poses a threat to the safety of police officers attempting to seize the drugs."[5] *Id.* at 762-63. We agree with the line of reasoning utilized by the *Singer* court.

The defendant relies primarily on *People v. Dumas,* 512 P.2d 1208 (Cal. 1973). *Dumas* was decided in 1973 by the California Supreme Court and involved a 1970 search warrant "for certain stolen railroad bonds and

---

[5]In its decision, the *Singer* court in no way relied upon the threats that had been made by the defendant. The only time that the threats were mentioned by the *Singer* court was in the recitation of the facts. The foundation of the *Singer* court's reasoning was that, for the safety of police officers executing a search warrant, it must necessarily be assumed that a person in possession of a large quantity of illegal drugs and a firearm will use his firearm to protect himself and his holdings.

bank checks and certain narcotics and narcotics paraphernalia." *Dumas,* 512 P.2d at 1211. The *Dumas* court concluded that compliance with the knock and announce rule is actually more compelling where the police officers know that the suspect possesses a firearm. *Id.* at 1213. The *Dumas* court apparently believed that a suspect was less likely to shoot at an identified police officer on official business and more likely to shoot at an intruder breaking into the residence. This rationale may have been true in 1973 and may still be true with respect to most law abiding citizens. However, the rationale of the *Dumas* court is outdated as applied to armed drug dealers in the 1990s.

The violence associated with drug trafficking today places law enforcement officers in extreme danger. Much of the fuel for such violence stems from street gangs and the profitability associated with dealing illegal drugs. An official report from the Office of the Attorney General states:

> One of the most frightening aspects of the [drug dealing] street gangs is their willingness to direct their violence at each other, at the police, at members of the public—at anyone who stands in the way of their operations. What makes this violence especially frightening is the amount of firepower at their disposal . . . [T]hey now have the wherewithal to acquire semi-automatic rifles and large-caliber handguns.

U.S. Dept. of Justice, Office of the Attorney General, *Drug Trafficking: A Report to The President of the United States* at 35 (August 3, 1989).[6]

---

[6] *See also* Report to the President and the Attorney General from the President's Commission on Organized Crime, *America's Habit: Drug Abuse, Drug Trafficking, and Organized Crime*

Wisconsin is not immune from the flow of illegal drugs into our communities. Drug trafficking and the violence that accompanies it is no longer limited to large metropolitan centers but pervades all of our country. Recently, one commentator has noted the problems associated with the migration of drug trafficking to smaller communities:

> Police in smaller cities, less experienced and outgunned by the automatic assault weapons that inevitably accompany drug traffic, have struggled to meet the challenge.

> The tide of drugs and guns has brought smaller communities face to face with the kind of . . . violence long endemic to big cities. Police are encountering offenders who are younger and more prone to hair-trigger violence than ever before.

"Big Crimes, Small Cities," Newsweek, June 10, 1991, at 16-17.[7]

Bitter experience has illustrated that guns are tools of the illegal drug trade. Therefore, we conclude, as did the *Singer* court, that a person in possession of both firearms and large quantities of illegal drugs poses a significant threat to the safety of law enforcement officers attempting to arrest the suspected drug dealer and seize the illicit drugs. Such volatile circumstances are sufficient to constitute "exigent circumstances" justifying an unannounced entry by the officers. *See Singer,* 943 F.2d at 763-64. The element of surprise attending an unannounced entry allows the officers to enter and secure the

---

(March 1986) and Moore and Kleiman, Perspectives on Policing, *The Police and Drugs* (Sept. 1989).

[7]*See also* "Crime: A Vested Interest," Time, May 21, 1990, at 33.

premises before the suspect is able to gather his or her thoughts and possibly gun down the officers as they attempt to identify their presence and purpose.

In *Dalia v. United States,* 441 U.S. 238, 257 (1979), the United States Supreme Court recognized that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' " However, whenever the police officers possess sufficient information at the time of the application for a search warrant that justifies dispensing with the announcement rule, they should present such information to a judge for the determination of whether to authorize the no-knock entry by police. The judge must grant or deny the officers' request for a no-knock authorization and the decision should be clearly stated on the face of the resulting search warrant.

An affidavit in support of a petition for a search warrant that sets forth circumstances that satisfy a judge that there is probable cause to believe the suspect possesses a significant amount of illegal drugs with an intent to deliver and the suspect possesses a firearm justifies the issuance of a search warrant containing a no-knock authorization. In accordance with sec. 161.41(1m), Stats., intent to deliver may be demonstrated by the possession of significant amounts, as to both quantity and monetary value, of illegal drugs, possession of drug paraphernalia, and activities or statements of the person who possessed the drugs. The no-knock authorization would permit the officers to enter the described premises without an announcement of their presence and purpose.

986

If a search warrant is issued in which the judge has granted the officers' request for a no-knock authorization and the circumstances upon which the judge relied when authorizing the no-knock entry change such that "exigent circumstances" no longer appear to exist, then the police officers should not utilize the no-knock authorization. Rather, the officers should comply with the announcement rule and identify their presence and purpose.[8] Conversely, if prior to the execution of a search warrant in which the judge has denied the request for a no-knock authorization, the circumstances of the situation change such that "exigent circumstances" develop justifying a no-knock entry, the police may dispense with the announcement rule where time does not permit judicial assessment of the changed circumstances. If the validity of the no-knock entry is subsequently challenged, the officers must be able to defend the course of action taken.

In the present case, Detective Olivas sought a no-knock authorization in conjunction with the search warrant. The circumstances presented to Judge Byrne con-

---

[8]The function of police officers is to enforce our laws and to protect the public safety. Effective law enforcement, however, must necessarily include community participation and direct citizen involvement. *See* Moore and Kleiman, Perspectives on Policing, *The Police and Drugs* at 4 (Sept. 1989). Congenial relations between citizens and police officers are essential for effective law enforcement and a progression of our society into a more peaceful existence. Therefore, law enforcement officers should maintain restraint, expertise, and professionalism to provide effective law enforcement and prevent potential abuse of police authority in the undertaking of a search or in the manner in which it is conducted.

987

stituted "exigent circumstances" justifying the issuance of a search warrant that contained a no-knock authorization; Williams was a suspected drug dealer that was observed selling illegal drugs out of his apartment, he possessed a firearm, and in essence represented that he would use the gun to defend himself. Therefore, because the judge provided no indication that the no-knock request was denied, we conclude that the officers could reasonably believe, as they did, that the resulting search warrant contained a no-knock authorization.

Irrespective of whether the search warrant authorized an unannounced entry by the police officers, events occurring subsequent to the issuance of the search warrant were sufficient to create exigent circumstances in this case that justified the unannounced entry by members of the Metro Narcotics Unit. Prior to identifying themselves, the officers attempted a ruse to entice Williams to voluntarily open the door to effectuate a drug transaction. The officers were attempting to obviate the need for a violent entry and to obtain first-hand evidence to substantiate Williams' intent to deliver the drugs. Suspicious of the circumstances, Williams refused to succumb to the scheme. At this point, the police officers could reasonably believe that an announcement of their identity would place them in significantly greater danger. The ruse had failed and Williams was then aware that a scheme was afoot to cause a confrontation with whomever was outside his apartment. The officers could have reasonably believed that identification could have resulted in a spontaneous hostile or violent reaction by Williams, who may have thought that the police identification was merely another ploy on the part of the drug dealer that threatened him. Therefore, we conclude that exigent circumstances existed in this

case to justify the unannounced entry by the police officers.

## II.

Williams also argues that admission of the expert opinion testimony elicited from Raemisch was a reversible error because it related to an ultimate conclusion that was to be decided by the jury.[9] The State contends that expert opinion is not inadmissible simply because it embraces an ultimate issue that is to be decided by the fact-finder.

Under sec. 907.04, Stats., testimony in the form of an opinion otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.[10]

Section 907.02, Stats., further provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

[9]Williams failed to object to the testimony of Officer Mahoney which duplicated the testimony of Raemisch. Williams argues now, however, that in the interests of justice this court should find Officer Mahoney's testimony inadmissible as well because it too relates to an ultimate issue to be decided by the jury. Because we hold that Raemisch's expert opinion testimony was admissible, we need not address the merits of Williams' failure to object to the admissibility of Officer Mahoney's testimony.

[10]Section 907.04, Stats., provides:

**907.04 Opinion on ultimate issue.** Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

education, may testify thereto in the form of an opinion or otherwise.

The record indicates that Raemisch was a former sheriff's detective and testified not that the defendant possessed drugs with the intent to deliver but that the items seized from the apartment indicated that the residents of the apartment were involved in the sale of controlled substances. The pertinent portion of Raemisch's expert opinion testimony was as follows:

Q [Attorney Gretchen Hayward, Assistant District Attorney]: And do you have an opinion based on your expertise as a drug enforcement officer for many years, narcotics officer, as to what all of [items seized from the apartment] meant?

. . ..

A [Raemisch]: Yes, I do have an opinion.

Q: What is that opinion, sir?

A: That the persons residing at [the apartment], were involved in the sale of controlled substances.

Q: And on what do you base that opinion?

A: I base that on the currency seized, the packaging materials, the scales that were found . . . and the other drug paraphernalia.

Raemisch testified that the evidence seized from the apartment tended to indicate that the residents of the apartment were involved in the sale of illegal drugs. His expert opinion testimony was based on the specialized knowledge obtained as a narcotics officer, an expert in the field of activities related to illegal drugs. His experience as a narcotics officer provided him with informa-

tion that dealers in illegal drugs generally possessed the items that were seized from this apartment. Because Raemisch's expert opinion testimony was based on specialized knowledge, it was not merely a lay opinion on the determination of whether Williams actually intended to deliver the drugs. Therefore, Raemisch's expert opinion testimony was admissible.

*By the Court.*—The judgment of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the mandate in this case.

## I.

As the circuit court stated, it's a close call. I conclude that there was a sufficient showing in this case of specific and articulable facts known to the officers at the time of entry that led the officers, and would lead a reasonable person, to believe that compliance with the knock-and-announce requirement would endanger the safety of the officers or others. Thus the officers were excused from the knock-and-announce requirement.[1]

In this case the officers who executed the warrant (which was silent about no-knock entry)[2] had reasonable grounds to believe at the time the warrant was executed that the defendant sold controlled substances out of his apartment, that he had a history of narcotics and burglary violations, that he had been convicted of a felony battery, and that he possessed a handgun to protect him-

---

[1]*State v. Cleveland,* 118 Wis. 2d 615, 630, 348 N.W.2d 512 (1984).

[2]In any event, whether the manner of entry is reasonable is to be determined at the time of entry. *State v. Cleveland,* 118 Wis. 2d 615, 630, 348 N.W.2d 512 (1984).

self from another drug dealer. The officers had no information that the defendant ever threatened to use the gun or that the possession of the gun had anything to do with the police, but they knew of the defendant's conviction of a violent crime.

I do not think mere possession of or access to a firearm is always a sufficient ground to jettison the knock-and-announce rule.[3] People with no intention of attacking police possess firearms in their homes. The federal Bureau of Alcohol, Tobacco, and Firearms estimates that there are approximately 200 million firearms in the nation, about one per person. The Wisconsin court of appeals' certification recounts that between 41 and 53 percent of respondents living in the Midwest reported a firearm in their home in the years 1973-1989.[4]

On the one hand, the suspect's access to a firearm means that the firearm may be used against law enforcement officers. On the other hand, a suspect may be less likely to shoot at police officers who identify themselves as such and more likely to shoot at what the suspect may view as unidentified intruders breaking into a residence. Indeed one of the reasons for the knock-and-announce

---

[3]We rejected in *Cleveland* the state's argument that because drug dealers are armed, the officers could reasonably believe that their safety would be endangered if they announced their presence. We concluded that the fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. The officer must have knowledge of specific facts that indicate that this particular person will conduct himself or herself in a dangerous manner when confronted by law enforcement officers. 118 Wis. 2d at 631, n.16.

In *United States v. Singer*, 943 F.2d 758, 762 (7th Cir. 1991), the suspect had a handgun and had made threats.

[4]Citing Sourcebook of Criminal Justice Statistics—1989, Hindelang Criminal Justice Research Center, Table 2.49.

requirement is stated in terms of protecting the officers. See *State v. Cleveland,* 118 Wis. 2d 615, 623, 348 N.W.2d 512 (1984).

Danger to the officers and the public from a knock-and-announce entry may be sufficiently established from the fact that the warrant relates to a particular type of serious criminal conduct, that the suspect has a firearm, and that there is reasonable suspicion of the suspect's violent nature. The suspect's known threats, as in *Singer,* or record of violent conduct, as in this case, and the suspect's possession of large quantities of drugs and a firearm are specific facts upon which officers might reasonably base their conclusion that the firearm will be used against them if they proceed with the ordinary announcements.[5]

Unannounced forcible entry is a serious disturbance of the security of people in their homes and cannot be justified on a *per se,* blanket basis. Each situation merits individual analysis. *Cleveland,* 118 Wis. 2d at 628–29.

## II.

The expert witness, Raemisch, could testify about the characteristics of a drug dealer. This information is

---

[5]*See, e.g., United States v. Nabors,* 901 F.2d 1351 (6th Cir. 1990); *Williams v. United States,* 576 A.2d 700 (D.C. App. 1990); *State v. Ford,* 310 Ore. 623, 801 P.2d 754 (1990); *People v. Marinez,* 513 N.E.2d 607, 610 (Ill. App. Ct. 1987), *cert. denied* 488 U.S. 868 (1988). See also 2 W. LaFave, *Search and Seizure* sec. 4.8(e) (2d ed. 1987).

For a decision concluding that a suspected drug dealer possessing a gun was not sufficient exigent circumstances to excuse the law enforcement officers from knocking and announcing their purpose before entering, see *People v. Condon,* 50 Crim. L. Rptr. 1555 (Ill. S. Ct. March 25, 1992). In that case the officers had no knowledge of any violent conduct by the suspect.

within his field of expertise and may be beyond the knowledge of many people; it would educate the factfinders and assist them in understanding the evidence in the case. Section 907.02, Stats. 1989–90.

Raemisch's testimony, however, went beyond imparting information about typical drug dealers. It was tantamount to a statement that the witness believed that the defendant committed the crime.[6] This testimony is not permitted because the witness is testifying beyond his field of expertise; he is giving an opinion as an expert about a conclusion which the jurors could draw from the evidence themselves. The jury can determine whether the state has proved the elements of this crime beyond a reasonable doubt without any expert opinion. *Cf. State v. Friedrich,* 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987) (ordinarily juror can knowledgeably determine credibility of the witness without help of expert witness); *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984) (expert witness may not opine that there was no doubt whatsoever that the complainant was an incest victim); *State v. Robinson,* 146 Wis. 2d 315, 431 N.W.2d 165 (1988) and *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988) (jury, not expert witness, draws inferences of guilt and credibility without assistance of expert witness). See also *McCormick on Evidence* sec. 12, at 147 (4th ed. 1992).

For the reasons set forth, I concur.

---

[6]The majority opinion 990 states that

"Raemisch testified that the evidence seized from the apartment tended to indicate that the residents of the apartment were involved in the sale of illegal drugs. . . . [His] expert opinion testimony . . . was not merely a lay opinion on the determination of whether Williams actually intended to deliver the drugs."