STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtis BREWER, Defendant-Appellant.†

Court of Appeals

*No. 94–1477–CR. Submitted on briefs April 27, 1995.—Decided June 14, 1995.*

(Also reported in 536 N.W.2d 406.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul G. Bonneson* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary E. Burke*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. Curtis Brewer was convicted of possessing a controlled substance, cocaine base, with intent to deliver, as a party to a crime. The first issue is whether Brewer's trial co-counsel were ineffective for failing to object to a defense witness appearing in prison attire and leg restraints. We hold that co-counsel's failure to object was a tactical decision, the rationale of which was founded upon fact and law. The second issue is whether evidence of gang-related symbols found at a drug scene can be used to infer that drug dealing is occurring. We hold that it may be so used. Sufficiency of evidence and interests of justice issues are also raised, which we reject. We affirm the conviction.

The facts relating to the ineffective assistance of counsel issue are as follows. Brewer's theory of defense was that although an individual who shared his residence, Naromney Waters, sold cocaine out of their residence, Brewer had no knowledge of such drug dealing because it occurred while he was at school. Consistent with this theory, Waters testified that the cocaine base was his alone and that Brewer did not know that the cocaine was on the premises or that Waters was selling the cocaine out of the premises. Waters, in custody at the time, testified in identifiable prison attire and leg restraints.

Brewer's appellate counsel filed a postconviction motion requesting a new trial, claiming ineffective assistance of co-counsel because of their failure to object to Waters's wearing prison attire and leg restraints. At the *Machner*[1] hearing, Brewer's co-coun-

---

[1] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

sel testified that they made a tactical decision to have Waters testify in prison clothing and restraints: "Waters was going to admit to being the guilty person and from [trial counsels'] perspective . . . the worse Waters looked, the more likely the jury would say yeah, in fact, he was the dope dealer . . .." The trial court denied Brewer's motion for a new trial.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that his or her counsel's actions constituted deficient performance and (2) that the deficiency prejudiced his or her defense. *State v. Hubanks*, 173 Wis. 2d 1, 24-25, 496 N.W.2d 96, 104 (Ct. App. 1992), *cert. denied*, 114 S. Ct. 99 (1993). The questions of whether counsel's actions were deficient and whether such actions prejudiced the defense are questions of law which we review de novo. *See id.* at 25, 496 N.W.2d at 104-05.

When a defendant fails to prove either prong of the test, the reviewing court need not consider the remaining prong. *See id.* at 25, 496 N.W.2d at 104. Here, we begin and end with the first prong. Under this prong, the defendant has the burden to prove that co-counsel were deficient; co-counsel are presumed to have provided adequate assistance. *Id.* at 25, 496 N.W.2d at 105. We assess the quality of co-counsel's performance by the standard of whether such performance was reasonable under the circumstances. *Id.* Even if it appears in hindsight that another defense would have been more effective, the strategic decision will be upheld as long as it is founded on rationality of fact and law. *Id.* at 28, 496 N.W.2d at 106.

Brewer contends that his co-counsel's defense strategy violated a general rule that defense witnesses

should not appear in prison attire and restraints and, therefore, the strategy was based on "erroneous rationale." He relies on *Harrell v. Israel*, 672 F.2d 632 (7th Cir. 1982), which held: "Concomitant to the defendant's right to appear before the jury without physical restraints is his right to have his witness appear that way also." *Id.* at 635. The Seventh Circuit acknowledged that although shackling defense witnesses "may be less prejudicial to the accused [than shackling defendants] because it does not directly affect the presumption of innocence, it nevertheless may harm his defense by detracting from his witness' credibility." *Id.* (citation omitted).

The State argues that the issue is not whether Brewer had a right to object to his defense witness's appearance, but whether the tactical decision of trial counsel can be founded on rationality of law and fact. We agree with the State's framing of the issue and assume that defendants have a right to object to their witnesses appearing in prison attire and restraints.[2]

---

[2] The State argues that criminal defendants do not have a due process right to object to the appearance of their witnesses in prison attire and restraints. Our independent research reveals a conflict in authority on this issue. There are cases from other states holding that this is not a due process consideration. *See, e.g., White v. Nevada*, 771 P.2d 152, 153 (Nev. 1989); *State ex rel. McMannis v. Mohn*, 254 S.E.2d 805, 811 (W.Va. 1979), *cert. denied*, 464 U.S. 831 (1983); *cf. Craig v. Texas*, 761 S.W.2d 89, 93-94 (Tex. Ct. App. 1988) (presumption of innocence afforded criminal defendant does not apply to defense witnesses because they are not the persons on trial).

However, the Seventh Circuit implicitly held, by negative inference, in *Harrell v. Israel*, 672 F.2d 632, 637-38 (7th Cir. 1982), that the appearance of defense witnesses in prison attire and restraints presents a due process consideration. The *Harrell* court noted that the right is not absolute and must give way

■ Brewer does not cite any authority, and we know of none, which prohibits the defense strategy of having witnesses appear in prison attire and restraints. Rather, it is inherent in our adversarial system that trial counsel may select a particular defense from the available alternatives. *See Estelle v. Williams*, 425 U.S. 501, 512 (1976); *see also Hubanks*, 173 Wis. 2d at 28, 496 N.W.2d at 106. In *Estelle*, 425 U.S. at 508, the United States Supreme Court recognized that in appropriate cases, criminal *defendants* may appear in prison attire as part of a defense strategy. Although *Estelle* held that forcing a criminal defendant to appear in prison clothing is inherently prejudicial and violates the Due Process Clause of the Fourteenth Amendment, it also noted that under "our adversarial system, . . . the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and [her or] his attorney." *Id.* at 512. Here, we similarly conclude that having a defense witness appear in prison clothing and leg restraints, which is arguably less prejudicial to the defense than having

to the need to maintain security in the courtroom. *Id.* at 635-36. The court held that "[i]n light of the danger inherent [under the circumstances of the case]," the defendant did not suffer a "denial of due process." *Id.* at 637.

Notwithstanding the apparent conflict in authority over the due process issue, our research revealed a consensus recognizing the potential prejudice inherent in such an appearance and apparently addressing the issue as a matter for trial court discretion. *See Woods v. Thieret*, 5 F.3d 244, 246-47 (7th Cir. 1993); *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993), *cert. denied*, 114 S. Ct. 1310, *and cert. denied*, 114 S. Ct. 1330 (1994); *United States v. Carter*, 522 F.2d 666, 677 (D.C. Cir. 1975); *People v. Ceniceros*, 31 Cal. Rptr.2d 303, 309-10 (Ca. Ct. App. 1994); *McMannis*, 254 S.E.2d at 810-11.

the *defendant* so appear, *see Harrell*, 672 F.2d at 635, can be part of a reasonable defense strategy.

Thus, we address the question of whether co-counsel's defense strategy was reasonable under the circumstances. Although co-counsel were aware that the jury might doubt Waters's credibility based on his attire, we nonetheless hold that it was reasonable to strategize that the jury would instead visit all unlawful activity on the person in prison attire, Waters, rather than on Brewer, who was dressed in civilian clothing. Waters's appearance likely put him in a bad light—that he was a criminal in custody—but also suggested to the jury that Waters's confession had been judicially confirmed. That a different choice might have been made by co-counsel is to no avail for Brewer's ineffective assistance claim. *See Hubanks*, 173 Wis. 2d at 28, 496 N.W.2d at 106.

Brewer also challenges the factual predicate to this analysis, arguing that his co-counsel never actually considered whether to put Waters on the stand in prison attire—that co-counsel simply missed the issue. We reject this challenge. At the *Machner* hearing, the trial court found that Brewer's two trial attorneys developed a defense strategy to make Waters "look as horrendous and horrifying as possible." We hold that its finding is not clearly erroneous. *See Hubanks*, 173 Wis. 2d at 25, 496 N.W.2d at 104. We conclude that Brewer has not satisfied his burden of showing that his trial co-counsel were defective.

Next, we address whether the testimony connecting gang activity to drug activity was improperly admitted. The facts concerning this issue are as follows. The State's theory of the case was that Brewer provided his residence as a base of operation for gang-related drug trafficking. During the State's case-in-

chief, a police officer testified that during a search of Brewer's bedroom, he found a notebook containing gang graffiti. Over defense objection, the notebook was received into evidence.

An investigator for the police department in the street crimes unit gave opinion testimony about the connection between gang-related materials and drug offenses; specifically, whether he had "come across gang-related materials when conducting drug search warrants." Brewer objected on the basis that the testimony was not relevant because there was no evidence that Brewer was a member of a gang and that the evidence was unfairly prejudicial. During the offer of proof, the State argued that it did not intend to show that Brewer was a member of a gang. Rather, it intended to show that gang materials are one indicator of drug dealing.

The trial court ruled that the evidence was not unfairly prejudicial and, because Brewer was charged as a party to the crime, the evidence was relevant. The trial court further ruled that under *State v. Williams,* 168 Wis. 2d 970, 485 N.W.2d 42 (1992), *overruled on other grounds by State v. Stevens,* 181 Wis. 2d 410, 511 N.W.2d 591 (1994), *cert. denied,* 115 S. Ct. 2245 (1995), and *State v. Whitaker,* 167 Wis. 2d 247, 481 N.W.2d 649 (Ct. App. 1992), the investigator's testimony was admissible as expert opinion testimony establishing the "nexus between gang activity and drug involvement."

The investigator then testified that in the geographic area including Brewer's neighborhood, "it would be more likely than not that [a police officer] may encounter gang-related materials during the execution of a [drug] search warrant, and this would indicate to [him] there is some form of potential gang affiliation

304

with persons within the residence and a specific gang
. . .." The investigator also testified that during the
search of Brewer, a pager was found, and that pagers
are commonly used by drug dealers to maintain contact
with customers and suppliers.

The admissibility of evidence is directed to the
sound discretion of the trial court, and we will not
reverse the trial court's decision to allow the admission
of evidence if there is a reasonable basis for the deci-
sion and it was made "in accordance with accepted
legal standards and in accordance with the facts of
record." *See Whitaker*, 167 Wis. 2d at 252, 481 N.W.2d
at 651 (quoted source omitted). The admissibility of
expert opinion testimony is assessed in light of 907.02,
STATS. *State v. Pittman*, 174 Wis. 2d 255, 267, 496
N.W.2d 74, 79, *cert. denied*, 114 S. Ct. 137 (1993). That
section allows admissibility if the expert testimony
"assist[s] the trier of fact to understand the evidence or
to determine a fact in issue." Section 907.02. Determin-
ing whether expert testimony assists the fact finder is a
discretionary decision of the trial court. *Pittman*, 174
Wis. 2d at 268, 496 N.W.2d at 79.

Brewer mainly argues that the trial court misused
its discretion when it ruled that *Whitaker* and *Williams*
allow expert opinion testimony establishing the nexus
between gang graffiti and drug dealing. He claims that
the present case is factually distinct from and therefore
outside the purview of *Whitaker* and *Williams*. We
disagree.

In *Williams*, 168 Wis. 2d at 979, 485 N.W.2d at 45,
expert opinion testimony was offered to show the con-
nection between certain items seized under a search
warrant and drug dealing. During the course of a
search, police officers seized "large quantities of

cocaine and marijuana, assorted drug paraphernalia, ... two loaded guns, and a large amount of cash." *Id.* at 978, 485 N.W.2d at 44. The expert witness, a former narcotics officer, gave the opinion that based on the seized evidence, the residents of the defendant's apartment were involved in the sale of drugs. *Id.* at 979, 485 N.W.2d at 45. The defendant argued on appeal that the opinion was improper because it related to an ultimate conclusion to be decided by the jury. *Id.* at 989, 485 N.W.2d at 49. Our supreme court disagreed and held that the testimony was properly admitted expert opinion testimony relating to matters outside the ken of the jury and based on specialized knowledge acquired by the expert during his experience as a narcotics officer. *See id.* at 989-90, 485 N.W.2d at 49-50.

Brewer contends that *Williams* is distinguishable because it involved the seizure of items to sell drugs, not the seizure of gang graffiti. We conclude that Brewer reads *Williams* too narrowly. Although *Williams* does not specifically address gang-related evidence, we agree with the State that the point of the case is that the nexus between "items generally possessed by drug dealers" and drug activity is an area of specialized knowledge and, therefore, a proper topic for expert testimony by narcotics officers if qualified by their knowledge, skill, experience, training or education. *See* § 907.02, Stats.[3]

Moreover, we conclude that *Whitaker* provides further guidance here. In *Whitaker*, the defendant was convicted for shooting a woman following the breakup of a party; the state's theory of the case was that the violence during and after the party was gang-related. *Whitaker*, 167 Wis. 2d at 252, 256, 481 N.W.2d at 651,

---

[3] Brewer does not challenge the investigator's qualifications as an expert on gangs.

652. There was eyewitness testimony that when the defendant shot the victim, the defendant was wearing a baseball cap with someone else's name on it. *Id.* at 252, 256, 481 N.W.2d at 651, 653. To buttress the identification testimony, the state put in a police officer's expert testimony that gang members exchange clothing to frustrate identification. *Id.* at 255, 481 N.W.2d at 652. The defendant argued on appeal that the topic of the officer's testimony was not outside the general knowledge and experience of the average juror and thus did not require expert testimony. *Id.* Without deciding whether expert testimony was required under the circumstances, we stated that expert testimony is permitted when it will assist the trier of fact to understand the evidence. *Id.* at 255-56, 481 N.W.2d at 652. We then held that the trial court did not misuse its discretion in concluding that the officer's testimony could assist the jury in evaluating the evidence. *Id.* at 256, 481 N.W.2d at 652. We further held that the officer's testimony about his "knowledge, skill, experience, [and] training" established a sufficient threshold foundation for his opinion testimony on gang activity. *Id.* at 257, 481 N.W.2d at 653 (quoted source omitted).

Brewer contends that *Whitaker* is factually distinct because in that case the defendant conceded the relevance of gang activity and in the present case there was no evidence that he was a member of a gang. Notwithstanding this factual distinction, we conclude that Brewer's argument does not recognize the legal standard set forth in *Whitaker*. *Whitaker* establishes that a properly qualified expert on gang activity may give an opinion if such opinion will assist the jury to evaluate

an issue in the case. *See id.* at 256-57, 481 N.W.2d at 652-53.[4]

■

Here, the testimony explained to the jury that gang symbols correlate with gang-related drug trafficking. The testimony was admitted to assist the jury in evaluating whether the notebook containing gang graffiti, along with the other evidence in the case, proved that Brewer's residence was the base of a drug operation. We hold that the trial court properly ruled, under *Whitaker* and *Williams*, that the investigator's opinion testimony would assist the jury.

■

Alternatively, Brewer argues that the graffiti evidence and, correlatively, the officers' testimony were not relevant. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Section 904.01, STATS.

■

Brewer contends that without any evidence that he or anyone else on the premises were gang members, the gang-related evidence had no bearing on whether Brewer provided his residence as a place to sell cocaine. We disagree. As already pointed out, the State did not offer this evidence to show that Brewer is a gang member; the State put in this evidence as one indicator of

---

[4] We note that other jurisdictions reviewing expert opinion testimony linking gang-related items to criminal activity have also held that such testimony is properly admitted where it can explain material facts and issues. *See, e.g., United States v. Robinson*, 978 F.2d 1554, 1561-65 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 1855, *and cert. denied*, 113 S. Ct. 2938 (1993); *Kansas v. Tran*, 847 P.2d 680, 686 (Kan. 1993).

drug activity. To be relevant, an item of proof need not prove the matter by itself; it need only be a "single link in the chain of proof." *See United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992) (quoted source omitted), *cert. denied*, 113 S. Ct. 1855, and *cert. denied*, 113 S. Ct. 2938 (1993). The expert testimony, as we stated previously, provided the probative link between the gang graffiti and the crime charged—that the graffiti evidence has a tendency to show drug activity. Evidence of gang membership was not a necessary part of the proof in the State's case. We hold that the gang-related evidence, as established by the officer's expert testimony, made it more probable, along with the other evidence in the case, that Brewer's abode was a base of operation for the sale of drugs. *See* § 904.01, STATS.

Brewer also argues that even if this evidence is relevant, its probative value is low and therefore outweighed by the danger of unfair prejudice. *See* § 904.03, STATS. Section 904.03, provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . .." The admission or exclusion of relevant evidence is a matter vested in the discretion of the trial court. *State v. Hinz*, 121 Wis. 2d 282, 285, 360 N.W.2d 56, 59 (Ct. App. 1984).

Brewer contends that the danger of prejudice lies in the jury's inferring that he is a gang member and, thus, a bad character. He argues: "When a jury hears that gangs are closely connected to drug dealing, the jury is likely to associate a gang with criminal activity and thus conclude that Brewer is involved in criminal activity."

We agree with Brewer that the gang-related evidence potentially prejudiced his defense. However, all

inculpatory evidence is prejudicial and will not be excluded for that reason alone. *See State v. Clark*, 179 Wis. 2d 484, 496, 507 N.W.2d 172, 176-77 (Ct. App. 1993). Section 904.03, STATS., favors admissibility; if the probative value of the evidence is close or equal in value to its prejudicial effect, the evidence must be admitted. *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429, 433 (1993).

Here, the trial court could properly conclude that the probative value of the gang-related evidence was high and the danger of prejudice not so high as to outweigh its probative value. The testimony provided circumstantial evidence that Brewer's residence was a base of operation for the sale of drugs. Brewer cannot insulate the jury from this evidence "where it is relevant to a determination of the case, simply because prejudice attaches to that revelation." *See People v. Nichols*, 601 N.E.2d 1217, 1222-23 (Ill. App. Ct. 1992) (quoted source omitted). We hold that the trial court did not misuse its discretion by admitting the gang-related evidence.

Further, any feared collateral inference that Brewer was a gang member could be explored as a matter of defense. In fact, during cross-examination of both officers, Brewer's trial counsel elicited their testimony that they had no knowledge concerning whether Brewer was in a gang and that it was possible to possess gang graffiti yet not be in a gang. If Brewer had further concerns about an improper inference, he could have addressed them by requesting a limiting instruction.

Next, Brewer argues that there was no evidence that he ever possessed the cocaine base and, thus,

there was insufficient evidence to convict him. Our standard of review is such that we "may not reverse a conviction, unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *See State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

Brewer challenges the sufficiency of the evidence on one element—possession of the cocaine base. *See* WIS J I—CRIMINAL 6035. We hold that a jury, acting reasonably, could have found beyond a reasonable doubt that Brewer possessed the cocaine base. *See Poellinger,* 153 Wis. 2d at 501, 451 N.W.2d at 755.

The trial evidence was that police officers found Brewer and a canister containing twenty-seven individually wrapped cocaine rocks in his bedroom. The trial court instructed the jury that it could convict Brewer under either of two liability theories: direct commission or aiding and abetting. We agree with the State and conclude that from the evidence, a jury could have reasonably convicted Brewer under either theory. Under a direct commission theory of liability, the jury could have reasonably found that Brewer knew about and had actual physical control over the cocaine base, *see* WIS J I— CRIMINAL 6035. Under an aiding and abetting theory, a jury could have reasonably found that Brewer aided the commission of the crime, either because he possessed the cocaine base or because he provided a base of operation for Waters's possession of the cocaine with intent to deliver.

Finally, Brewer argues that the trial court erred in not granting his postconviction motion for a new trial

in the interests of justice. *See* §§ 805.15(1), 752.35, STATS. Brewer's "interests of justice" argument merely restates his claims about Waters's appearance and the admission of the gang-related evidence; we need not address these arguments further.

*By the Court.*—Judgment and order affirmed.