STATE of Wisconsin, Plaintiff-Respondent,

v.

Eric A. HENDERSON, Defendant-Appellant.

Supreme Court

*No. 99–2296–CR. Oral argument October 3, 2000.——Decided July 9, 2001.*

2001 WI 97

(Also reported in 629 N.W.2d 613.)

For the defendant-appellant there were briefs and oral argument by *Eileen A. Hirsch*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Diane M. Welsh*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DIANE S. SYKES, J. This is a challenge to a "no-knock" entry during the execution of a search warrant. The court of appeals certified the case to us to decide whether a reviewing court may consider information known to the police but not included in the warrant application in evaluating the constitutionality of the unannounced entry.

¶ 2. Stevens Point police obtained a warrant to search defendant Eric Henderson's home for evidence of drug dealing. They requested no-knock authorization, but for unexplained reasons, the warrant neither granted nor denied it. The police did not knock and

351

announce when executing the warrant. Henderson moved to suppress the evidence recovered in the search of his home, and during the suppression hearing the narcotics officers who sought and executed the warrant testified to facts regarding Henderson and his associates known to the police but not included in the warrant application. The circuit court denied the motion. Henderson pled guilty and appealed, and the court of appeals certified the case to us.

¶ 3. The rule of announcement derives from the reasonableness clause of the Fourth Amendment rather than the warrant clause. *Wilson v. Arkansas*, 514 U.S. 927, 930 (1995). The constitutional reasonableness of a no-knock entry is determined by reference to the circumstances existing at the time of the entry rather than at the time the warrant was issued. *Richards v. Wisconsin*, 520 U.S. 385, 395 (1997); *State v. Meyer*, 216 Wis. 2d 729, 753, 576 N.W.2d 260 (1998). Accordingly, we conclude that a reviewing court may consider evidence beyond that which was included in the warrant application in evaluating the reasonableness of a no-knock execution of a search warrant. We further conclude that the evidence introduced at the suppression hearing—including the facts known to the police but not included in the warrant application—was sufficient to support the no-knock entry in this case, and therefore affirm the circuit court's denial of the defendant's suppression motion.

I

¶ 4. In late 1997 and early 1998, the Stevens Point Police Department targeted Eric Henderson in an ongoing cocaine and marijuana investigation. As part of that investigation, a confidential police inform- ant, using marked "buy money," purchased

352

approximately two grams of cocaine from Henderson at Henderson's apartment and turned it over to the police.

¶ 5. The following day, February 27, 1998, Detective Mike Retzki, a Stevens Point Police Department drug investigator, applied to the Portage County Circuit Court for a warrant to search Henderson's apartment. The warrant application alleged probable cause that controlled substances would be found in the apartment based upon information obtained from confidential informants and the controlled buy the previous day. The warrant application also requested authorization for no-knock execution of the warrant. In support of no-knock execution, the application stated:

> Your affiant knows through his training and experience in drug enforcement that dealers/traffickers in large quantities of cocaine and marijuana have access to weapons used in the defense of their persons, currency and contraband, and are likely to threaten law enforcement officers with the same. And further, your affiant knows through his training and experience that dealers/traffickers in large quantities of cocaine and marijuana are likely to engage in the immediate destruction of evidence upon notification that law enforcement authorities are in the process of executing a search warrant, and thus hinder law enforcement's capacity to gain evidence of criminal activity.

The Circuit Court for Portage County, Judge John V. Finn, issued the search warrant. The warrant neither expressly granted nor denied authorization for a no-knock entry.

¶ 6. Later that day, Retzki and the SWAT team executed the warrant with a no-knock entry. In the subsequent search of Henderson's apartment, officers seized approximately 220 grams of marijuana, $959

(including $120 of marked "buy money" that the confidential informant used to purchase cocaine from Henderson the day before), and a digital scale. Henderson was charged with possession with intent to deliver marijuana within 1000 feet of a city park or school as a repeat offender, contrary to Wis. Stat. §§ 961.41(1m), 961.49, and 961.48(1) (1995–96).[1] Henderson moved to suppress the evidence recovered during the search, contending that the search was unreasonable under the Fourth Amendment because officers did not comply with the rule of announcement when executing the warrant.[2] Henderson also argued that the information contained in the warrant application in support of no-knock authorization was defective because it did not allege particularized circumstances justifying a no-knock warrant in this case.[3]

¶ 7. At the suppression hearing, the State presented two witnesses, Detective Mike Retzki and Gary Koehmstedt, a Portage County Sheriff's deputy who had participated in the search. Both Retzki and Koehmstedt were veteran drug investigators who had participated in training programs for drug investigation and enforcement. Retzki had executed between 15 and 20 search warrants and Koehmstedt had executed over 30 warrants. Both testified to two concerns that prompted them to execute a no-knock entry.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

[2] Henderson did not dispute that the warrant application demonstrated sufficient probable cause.

[3] Henderson's motion appears to concede that the warrant issued in this case authorized a no-knock entry, and only disputes whether or not the underlying facts were sufficient to justify no-knock execution. The warrant itself, however, does not contain explicit authorization for a no-knock entry.

¶ 8. First, the officers said they were concerned that Henderson may attempt to destroy evidence if given the standard search warrant warning by the police. Both Retzki and Koehmstedt testified that they had personally executed search warrants on drug dealers who destroyed drug evidence by flushing it down a toilet. Koehmstedt stated that on one occasion he had attempted to retrieve marijuana that a suspect had flushed down a toilet.

¶ 9. Furthermore, and specifically as to Henderson, the officers were aware that Henderson had been charged with possession of marijuana in 1994 and that he had been present in a residence upon which narcotics officers, including Koehmstedt, had executed a drug warrant in 1996. At that time, Henderson had been found in possession of large quantities of marijuana and currency. Retzki believed that Henderson's prior arrests gave him a strong incentive to avoid being caught again and charged as a repeater.

¶ 10. Additionally, the layout of Henderson's apartment made destruction of drug evidence easier in this case. The confidential informant had provided police with a diagram of the apartment indicating that the bedroom where Henderson stored his drugs was located directly across from the bathroom. Retzki testified that given that proximity, it would be easy for Henderson to dispose of any controlled substances during the time it took officers to knock and announce themselves. Finally, Retzki stated that he knew Henderson and his associates to be "very in tune with drug trafficking practices," "very careful," and "very difficult to catch," all factors leading Retzki to believe that Henderson would destroy evidence if given the opportunity.

¶ 11. Second, the officers testified that they were concerned about the possibility of violence. The officers

were aware that one of Henderson's associates, Larry Moore, sold guns to his friends, and shortly before the warrant was executed, had sold a pistol to the confidential informant. Police were uncertain whether Moore carried a weapon himself. Retzki testified that another of Henderson's associates, Kevin Rutherford, was a "big concern" to the police and had been present in the apartment during the controlled buy the day before the search. The confidential informant had also told Retzki that Henderson had threatened him, telling the informant that he would retaliate if the informant ever betrayed Henderson and his associates.

¶ 12. Furthermore, Retzki testified that while working as a patrol officer he had dealt with both Henderson and Rutherford "in a very combative atmosphere" on more than one occasion. Retzki indicated that police concerns were heightened because Henderson's associates were known to be involved in gang activity. The officers were also concerned that they could not know how many of Henderson's associates would be inside the apartment at the time the search warrant was executed.

¶ 13. On cross-examination, Retzki testified that he was aware of the foregoing facts when he applied for the search warrant, but had not included them in his request for no-knock authorization. Retzki said he was not aware of any changes in circumstances or additional facts that came to light between the time of the warrant application and the time police executed the warrant.

¶ 14. Henderson argued that because the police were aware of the information now proffered as justification for the no-knock entry at the time they sought the warrant, but had not included it in the warrant application, the State was barred from introducing the

information after-the-fact at the suppression hearing on the no-knock entry. In a written decision, the circuit court denied the suppression motion, relying on the distinction between a probable cause inquiry, in which a reviewing court is confined to the evidence presented to the magistrate who issued the warrant, and a no-knock inquiry, in which a reviewing court examines the facts as of the time the search warrant was executed. The circuit court found the totality of the evidence sufficient to justify the officers' concerns about the destruction of evidence and the possibility of violence, and upheld the no-knock entry.

¶ 15. Following denial of his motion, Henderson pleaded no contest to one count of possession of marijuana with intent to deliver as a repeat offender, contrary to Wis. Stat. §§ 961.41(1m)(h)1 and 961.48(1). He then appealed. The court of appeals certified the case, asking us to decide two questions: 1) may the State use information known to the police but not included in a warrant application to later justify an unannounced entry in the execution of the warrant, and 2) was the evidence introduced at the suppression hearing—either including or excluding the facts known to the police but not included in the warrant application—sufficient to justify the unannounced entry in this case?

II

■

¶ 16. This case presents a question of constitutional fact that we review under a two-part standard. *State v. Hughes*, 2000 WI 24, ¶ 15, 233 Wis. 2d 280, 607 N.W.2d 621. We uphold the circuit court's findings of historical or evidentiary fact unless clearly erroneous. *Id.* We independently review the circuit court's applica-

tion of constitutional principles to those evidentiary facts. *Id.*

¶ 17. Henderson argues that the officers' decision to dispense with the rule of announcement in the execution of the search warrant at his home violated his Fourth Amendment rights. The Fourth Amendment prohibits unreasonable searches and seizures and sets forth the manner in which warrants shall issue:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[4]

¶ 18. The reasonableness clause of the Fourth Amendment is a statement of broad protection against unreasonable searches and seizures. The determination of reasonableness is made by reference to the particular circumstances of each individual case, *Ker v. California*, 374 U.S. 23, 33 (1963) (plurality opinion), and balances " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests

---

[4] Wisconsin's search and seizure provision, Article I, Section 11 of the state constitution, is substantively identical to the Fourth Amendment. Our interpretation of the state constitutional provision has been consistent with the United States Supreme Court's interpretation of the Fourth Amendment. *State v. Ward*, 2000 WI 3, ¶ 55, 231 Wis. 2d 723, 604 N.W.2d 517.

alleged to justify the intrusion.' " *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). Constitutional reasonableness relates not only to the grounds for a search or seizure but to the circumstances surrounding the search or seizure's execution. *Id.*

¶ 19. The Fourth Amendment's warrant clause provides more particularized protections governing the manner in which search and arrest warrants are issued. The warrant clause requires that officers obtain prior judicial authorization for a search from a neutral, disinterested magistrate. *Dalia v. United States*, 441 U.S. 238, 255 (1979). It also requires the officer seeking a warrant to demonstrate upon oath or affirmation probable cause to believe that " 'the evidence sought will aid in a particular apprehension or conviction' " for a particular offense. *Id.* (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967)). Finally, it requires that warrants must particularly describe the place to be searched, as well as the items to be seized. *Id.* Searches made without warrants issued pursuant to the requirements of the warrant clause are presumed to be unconstitutional. *Welsh v. Wisconsin*, 466 U.S. 740, 748–49 (1984).

¶ 20. The specific focus of this case is the rule of announcement, which relates to the manner in which search warrants are executed. *State v. Cleveland*, 118 Wis. 2d 615, 623, 348 N.W.2d 512 (1984), *overruled on other grounds by State v. Stevens*, 181 Wis. 2d 410, 430, 511 N.W.2d 591 (1994). The rule of announcement requires that, when executing a search warrant, officers: 1) announce their identity; 2) announce their purpose; and 3) momentarily wait for the occupants to

refuse their admittance or open the door. *Meyer*, 216 Wis. 2d at 734–35 n.4. The rule protects the safety of police officers and others, prevents the physical destruction of property, and takes into consideration the limited privacy interests of the occupants of the premises to be searched. *Id.*; *State v. Williams*, 168 Wis. 2d 970, 981–82, 485 N.W.2d 42 (1992), *overruled on other grounds by Stevens*, 181 Wis. 2d at 430.

¶ 21. The modern rule of announcement derives from an English common law rule that required a sheriff, when executing a search warrant, to announce his purpose before breaking down a door. *Wilson*, 514 U.S. at 931–32 (citing *Semayne's Case*, 77 Eng. Rep. 194, 195–96 (K.B. 1603)). This common law rule was recognized as a tradition "embedded in Anglo-American law." *Miller v. United States*, 357 U.S. 301, 313 (1958).

¶ 22. For some time it was uncertain whether the rule of announcement was simply a common law tradition or whether it had constitutional dimensions. The Court's decision in *Ker* seemed to suggest the latter: "the method of entering the home may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search." *Ker*, 374 U.S. at 38. It was not until *Wilson*, 514 U.S. at 930, that the United States Supreme Court addressed the issue directly.

¶ 23. In *Wilson*, narcotics officers executing search and arrest warrants at Sharlene Wilson's Arkansas home did not knock and announce, but, rather, entered the home through an unlocked screen door, while identifying themselves as police. *Wilson*, 514 U.S. at 929. Wilson challenged the entry, arguing that the search was invalid because of the officers' failure to comply with the rule of announcement. *Id.* at 930. The Court explored the long history of the common

law knock and announce principle, and concluded that the rule of announcement forms part of the Fourth Amendment's reasonableness inquiry:

> [W]e have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. . .we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

*Id.* at 934.

■

¶ 24. Like other components of constitutional reasonableness, the rule of announcement is not an absolute requirement. *Id.* Indeed, since the rule's earliest common law origins, courts have recognized that under certain circumstances law enforcement officers may forcibly enter a premises without announcement. *Ker*, 374 U.S. at 38. While the Supreme Court in *Wilson* firmly grounded the rule of announcement in the Fourth Amendment's reasonableness clause, the Court also recognized that the "flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson*, 514 U.S. at 934. *Wilson* indicated that an unannounced entry might be reasonable in circumstances "presenting a threat of. . .violence," or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Id.* at 936.

¶ 25. The Court later clarified the circumstances that constitute exceptions to the rule of announcement in *Richards*, 520 U.S. at 394. The issue in *Richards*

focused on the constitutionality of a blanket exception to the rule of announcement in felony drug cases. *Id.* at 387–88. The judicial officer who issued the warrant in *Richards* had declined no-knock authorization, but the police dispensed with the rule of announcement anyway. *Id.* at 388. This court concluded that police officers executing search warrants in felony drug cases are *never* required to comply with the rule of announcement. *State v. Richards*, 201 Wis. 2d 845, 866, 549 N.W.2d 218 (1996).

¶ 26. The United States Supreme Court concluded that a blanket exception to the rule of announcement for *all* felony drug cases is not constitutionally permissible. *Richards*, 520 U.S. at 387–88. However, the Court held that police officers may dispense with the rule of announcement where there is "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394; *accord Meyer*, 216 Wis. 2d at 734–35.

¶ 27. The Supreme Court in *Richards* also held that the reasonableness of an officer's decision to enter without knocking and announcing is evaluated by a reviewing court based upon information known to the officer at the time of entry. *Richards*, 520 U.S. at 395; *accord Meyer*, 216 Wis. 2d at 753. Thus, while rejecting a blanket exception for felony drug cases, the Court nevertheless upheld the unannounced entry in *Richards* because it was reasonable under the circumstances at the time of the entry. The Court held that a magistrate's refusal to pre-authorize a no-knock entry in a search warrant does "not alter the reasona-

bleness of the officers' decision, which must be evaluated as of the time they [executed the warrant]." *Richards*, 520 U.S. at 395.

¶ 28. In another context, the Supreme Court has rejected the argument that the manner in which a warrant is executed is subject to the requirements of the warrant clause. *Dalia*, 441 U.S. at 257. In *Dalia*, the Justice Department sought and obtained a warrant to intercept telephone conversations on two phones at Lawrence Dalia's business office. Although the warrant did not explicitly authorize agents to covertly enter Dalia's office to plant the bugging device, agents did so. *Id.* at 245. Dalia challenged the evidence obtained from the bugs. The Supreme Court upheld the entry, concluding that the Fourth Amendment does not require officers to obtain prior judicial authorization for the exact manner of execution of a warrant:

> Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the three requirements [of the warrant clause] discussed above, search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection "against unreasonable searches and seizures."
>
> . . . .
> It would extend the Warrant Clause to the extreme to require that, whenever it is reasonably likely that Fourth Amendment rights may be affected in more than one way, the court must set forth precisely the procedures to be followed by the

executing officers. Such an interpretation is unnecessary, as we have held—and the Government concedes—that the manner in which a warrant is executed is subject to later judicial review as to its reasonableness.

*Id.* at 257–58 (footnote omitted).

¶ 29. These cases yield a number of fundamental principles: 1) the rule of announcement is a requirement of the Fourth Amendment's reasonableness clause, not its warrant clause; 2) the validity of a no-knock execution of a search warrant is subject to after-the-fact judicial review for constitutional reasonableness, which is determined by reference to the circumstances as they existed at the time of the entry; and 3) the manner in which a search warrant is executed is not subject to the requirements of the warrant clause and therefore does not require prior judicial authorization.

¶ 30. Applying these principles here, we conclude that a court reviewing the reasonableness of a no-knock execution of a search warrant is not precluded from considering facts known to the police but not included in the search warrant application. The relevant inquiry focuses on the circumstances existing at the time of the entry and the reasonableness of dispensing with the rule of announcement because compliance with the rule would be dangerous or futile, would risk destruction of evidence or would otherwise inhibit the effective investigation of the crime.

¶ 31. This conclusion is not, as Henderson suggests, contrary to the rule against "rehabilitating" a warrant after-the-fact by information known to the police but not included in the warrant application. *See*

*Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971) ("an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate"); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("[i]t is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention"). *See also State v. Kerr*, 181 Wis. 2d 372, 380, 511 N.W.2d 586 (1994) (a court reviewing the validity of a warrant is confined to the record presented to the issuing magistrate, whose findings are upheld unless "clearly insufficient to support a finding of probable cause").

¶ 32. The rule, stated in *Aguilar* and reiterated in *Whiteley*, applies only to challenges to the sufficiency of a search warrant under the warrant clause, not challenges to the manner of execution of a search warrant under the reasonableness clause. The cases recognized that allowing the probable cause basis for the issuance of a warrant to be bolstered after the fact would render the warrant clause meaningless by essentially allowing warrants to be issued upon less than probable cause, as long as the proper showing could be made later. *Whiteley*, 401 U.S. at 565 n.8 (citing *Aguilar*, 378 U.S. at 109 n.1). They also recognized that allowing defective warrants to be "rehabilitated" in this way would remove the initial probable cause determination from the neutral magistrate where the constitution explicitly places it. *Id.* at 565–66. These concerns are not present in the post hoc evaluation of a law enforcement decision to dispense with the rule of announcement, which is not a component of the Fourth Amendment's warrant clause but its reasonableness

clause and therefore is not subject to prior judicial authorization.

¶ 33. Moreover, jurisdictions are divided over the question of whether magistrates may authorize no-knock entries in a warrant at all. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.8(g) (3d ed. 1996). Some courts have concluded that such warrants are permissible only where they are authorized by a specific statutory enactment. *See, e.g., State v. Eminowicz*, 520 P.2d 330, 332 (Ariz. Ct. App. 1974); *Parsley v. Superior Court*, 513 P.2d 611, 614 (Cal. 1973); *State v. Bamber*, 630 So. 2d 1048 (Fla. 1994). *But see, e.g., Cox v. State*, 286 S.E.2d 482, 484–85 (Ga. Ct. App. 1981); *Commonwealth v. Scalise*, 439 N.E.2d 818, 822 (Mass. 1982); *State v. Lien*, 265 N.W.2d 833, 838 (Minn. 1978).

¶ 34. In Wisconsin, judicial officers are authorized to issue no-knock warrants. In *Cleveland*, 118 Wis. 2d at 626, we considered the question of whether, in the absence of specific statutory authorization, judicial officers may issue no-knock warrants. We concluded that they may, because "there may be occasions in which facts justifying an unannounced entry would be known at the time the warrant is sought, and that both law enforcement officers and citizens benefit from review of the entry by a neutral magistrate." *Id.* (footnotes omitted). Similarly, in *Williams* we stated:

> [W]henever the police officers possess sufficient information at the time of the application for a search warrant that justifies dispensing with the announcement rule, they should present such information to a judge for the determination of whether to authorize the no-knock entry by police.

*Williams*, 168 Wis. 2d at 986.

¶ 35. The court of appeals, in its certification, asked us to address "[w]hether the directives offered in *Williams* and *Cleveland* should be elevated to a constitutional rule comparable to that for probable cause challenges." The court asks, in effect, whether the reference to "should" in *Williams* actually means "must." It does not. *Wilson*, *Richards*, and *Dalia* establish quite clearly that as a matter of Fourth Amendment law, a no-knock entry is subject only to an after-the-fact judicial review for reasonableness; it does not require prior judicial authorization inasmuch as it is not a component of the Fourth Amendment's warrant clause.

### III

¶ 36. The constitutional validity of the unannounced entry in this case therefore turns on whether the evidence introduced at the suppression hearing—including the facts known to the police but not included in the warrant application—was sufficient to meet the *Richards* test. That is, was the evidence sufficient to establish a "reasonable suspicion that knocking and announcing. . .under the particular circumstances, would be dangerous or futile, or. . .would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence"? *Richards*, 520 U.S. at 394; *Meyer*, 216 Wis. 2d at 734–35. This showing is not high. *Richards*, 520 U.S. at 394.

¶ 37. The evaluation focuses on the particular facts of the case and the reasonable inferences that can be drawn from the facts, considered in combination with the officer's training and experience. *Meyer*, 216 Wis. 2d at 735. We do not resort to blanket rules or generalizations. *Id.* at 748–51. As we have seen, two

considerations typically justify dispensing with the rule of announcement—officer safety and preservation of evidence. Both are present under the specific circumstances of this case.

¶ 38. The officers who executed this search warrant reasonably suspected that Henderson might destroy the drug evidence if they knocked and announced. Henderson's prior record of drug dealing certainly gave him an incentive to do so, given the heightened penalties for repeat drug offenders. *See* Wis. Stat. § 961.48. Furthermore, the officers knew that the layout of Henderson's apartment and, more specifically, the location of the room in which he stored his drugs—across from the bathroom—made quick destruction of the evidence particularly easy. The officers were also aware, based upon their previous experiences, that drugs like marijuana and cocaine are easily destroyed and that drug dealers often flush them down the toilet as the police are crossing the threshold with a warrant.

¶ 39. The officers also reasonably suspected that announcing entry in this case might endanger their safety. The police knew Henderson to be combative during previous encounters and also knew that he had threatened violence against the confidential informant. Furthermore, they were aware that Henderson's associate, Larry Moore, had sold guns to his friends and to the confidential informant. They also knew Henderson and his associates were involved in gang activity.

¶ 40. Henderson argues that it was unreasonable to suspect that he would attempt to destroy evidence since he had not done so in the past, and that it was improper to consider the activities of his associates in

evaluating the risk to officer safety. These are weak arguments at best. A history of evidence destruction is not a threshold requirement for a no-knock entry, and the potential presence of associates known to have weapons or gang affiliation is highly relevant to the inquiry. The no-knock entry was reasonable under all the circumstances.

## IV

¶ 41. We conclude, therefore, that because the constitutionality of a no-knock execution of a search warrant depends upon its reasonableness at the time of execution, a reviewing court may consider all facts and circumstances known to the police at the time of the unannounced entry, including information not included in the warrant application. We further conclude that the facts of this case support the circuit court's conclusion that compliance with the rule of announcement would have endangered officer safety and risked the destruction of evidence. Accordingly, we affirm.

*By the Court.*—The order of the circuit court is affirmed.

¶ 42. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I do not agree that the officers' testimony in this case satisfies the U.S. Supreme Court's test[1] for a no knock entry.[2] I therefore dissent.

---

[1] *State v. Richards*, 520 U.S. 385, 394 (1997).

[2] The magistrate in the present case failed to authorize a no knock entry. The fact that a warrant does not authorize a no knock entry adds a layer of complexity to the good faith exception adopted in *State v. Eason*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. In *Eason*, this court concluded that the exclusion-

¶ 43. The majority opinion concludes that the officers in this case had two grounds for dispensing with the constitutional rule of knocking and announcing their presence: (1) knocking and announcing their presence might have allowed the defendant to destroy evidence and (2) knocking and announcing their presence might have endangered the officers' safety. Some particularity to support reasonable suspicion is required under *Richards v. Wisconsin*, 520 U.S. 385 (1997).

¶ 44. First, there are not sufficiently particular facts to suggest that the officers had reasonable suspicion that knocking and announcing their presence would allow the destruction of evidence.

¶ 45. The majority opinion relies on the fact that the bedroom where the drugs were kept is near a bathroom, making destruction of evidence easy. However, in most apartments and indeed in most houses, each room usually has easy access to a bathroom.[3]

---

ary rule does not apply where officers rely in good faith on a warrant authorizing a no knock entry, provided that the officers conduct sufficient investigation and review before applying for the warrant. Good faith reliance may be undermined where, as here, officers do not include in the affidavit all information known at the time they apply for a warrant or where the officers subsequently learn of facts that undermine reasonable suspicion.

[3] *See State v. Bamber*, 630 So. 2d 1048, 1055 n.6 (Fla. 1994) (information that drugs were stored "near the bathroom" was not sufficient to establish reasonable suspicion that they may be destroyed, because "there is nothing in the affidavit to show that the proximity of drugs to the bathroom is anything but happenstance. The residence was a conventional four-bedroom, four-bath home, and virtually any room in the home would have been 'near a bathroom.' ").

¶ 46. The majority opinion also relies on the fact that Henderson had a prior drug-dealing record. Thus, the majority concludes, Henderson had added incentive to avoid getting caught.[4] What criminal lacks incentive to avoid getting caught? If anything, Henderson's own criminal history supports the conclusion that Henderson was unlikely to destroy evidence. Indeed, testimony established that in two prior searches that turned up drugs, Henderson did not attempt to destroy evidence.

¶ 47. Second, there are not sufficiently particular facts to suggest that the officers had reasonable suspicion that knocking and announcing their presence would endanger their safety.

¶ 48. The officers' testimony focused on the dangerousness posed by a so-called associate of the defendant, Larry Moore. But the testimony gives no indication of the extent of Moore's "association" with the defendant or whether the officers believed that Moore or Moore's weapons would be present in the home.

¶ 49. Although the testimony establishes that the officers believed that a second individual, Kevin Rutherford, might be present in the defendant's residence, the officers did not provide any information to evaluate the reasonableness of their suspicion that Rutherford's presence might endanger their safety, were officers to knock and announce their presence. The officers testified only that Rutherford was "a big concern" and that they had previously interacted with Rutherford in a combative atmosphere.

¶ 50. But the officers also testified that the defendant was not known to carry a weapon, and they

_____

[4] *See* majority op. at ¶ 38.

did not testify about any specific acts of violence by the defendant against officers. Without particular allegations of violent conduct, general allegations regarding the defendant's "gang affiliation" do not establish a reasonable suspicion that knocking and announcing the officers' presence might endanger the officers' safety.

¶ 51. For the reasons set forth, I dissent.

¶ 52. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.