**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 15, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2024AP989-CR**

Cir. Ct. No. 2022CF348

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

GENE A. WILTGEN,

   DEFENDANT-APPELLANT.

            APPEAL from a judgment of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Affirmed*.

            Before Graham, Nashold, and Taylor, JJ.

            **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

            ¶1      PER CURIAM.   Defendant Gene A. Wiltgen appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration as

a fourth offense under WIS. STAT. §§ 346.63(1)(b) and 346.65(2)(g) (2023-24).[1] In the circuit court, Wiltgen moved to suppress certain statements and physical evidence based on an alleged unconstitutional interrogation in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Section 8 of the Wisconsin Constitution, and *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899.  The circuit court denied Wiltgen's motion.

¶2     On appeal, Wiltgen argues that the circuit court made erroneous findings of fact that resulted in the court concluding that no unconstitutional interrogation occurred.  Specifically, Wiltgen alleges that the arresting officer intentionally and unconstitutionally delayed placing him in custody in order to interrogate him, in violation of his right against self-incrimination as protected by *Knapp* and by Article I, Section 8 of the Wisconsin Constitution.  We conclude that no constitutional violation occurred because, based on the undisputed facts, Wiltgen was not in custody during the officer's questioning of him prior to his arrest.  Accordingly, we affirm.

## BACKGROUND

¶3     The following facts are derived from a combination of sources, including the criminal complaint; the testimony of police officer Trenton Benning, who responded to the accident and testified at an evidentiary hearing concerning a

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

different motion to suppress evidence not at issue in this appeal;[2] audiovisual evidence captured by Benning's officer-worn body camera that recorded the entirety of the interaction between him and Wiltgen; and the circuit court's factual findings as stated in its decision to deny the motion.

¶4      Benning testified as follows.  Late in the evening on May 3, 2022, Benning was on duty as a police officer with the City of La Crosse when he received a dispatch call concerning a vehicle that had driven off the roadway.  At the time of the incident, Benning had been a police officer for approximately one year.  When Benning responded to the location, an eyewitness pointed to a vehicle that had driven off the road and crashed into a wooded area and dirt embankment.  The vehicle was visible by its taillights.  Given the nature of the accident, Benning believed the vehicle occupants could be injured, and he ran to the vehicle for the purpose of possibly rendering aid.  As he approached the vehicle, Benning saw that the driver-side front and rear doors were buried in dirt.  Benning illuminated the interior of the vehicle with his flashlight and saw only one individual, later identified as Wiltgen, sitting in the passenger seat.  Benning attempted to communicate with Wiltgen through the driver-side window, but he did not receive audible responses from Wiltgen.  Benning observed that Wiltgen's nose was bleeding.  Because the front passenger door was also buried in dirt, Benning had to force open the passenger door to reach Wiltgen and to determine whether Wiltgen

_____

[2] Earlier in the circuit court proceedings, Wiltgen filed a separate motion to suppress evidence alleging that Benning lacked reasonable suspicion or probable cause when he opened Wiltgen's front passenger-side car door.  The court held an evidentiary hearing on the motion, at which the State called Benning as a witness and elicited testimony from him.  Because the motion involved only what occurred prior to and including Benning opening the vehicle door, the parties solicited only limited testimony from Benning.  The circuit court denied the motion, which is not at issue in this appeal.

was injured. When Benning opened the door, he smelled a strong odor of alcohol in the car. As Benning spoke with Wiltgen, he observed that Wiltgen's speech was slurred and that his eyes were red, bloodshot, and glassy.

¶5 The audiovisual footage from Benning's body camera shows the following after Benning opened the passenger-side door of Wiltgen's car and began interacting with Wiltgen. Wiltgen indicated that he was not hurt, and Benning asked if Wiltgen would get out of the car. Both Benning and Wiltgen walked through the woods to the road. Benning questioned Wiltgen about the accident, where he was coming from and going, and whether he had consumed any alcoholic beverages. Wiltgen said that he was driving the vehicle and that nobody else was in the vehicle at the time of the accident. He also said that he had consumed two beers between 4:00 and 7:00 p.m. at one establishment and then three more beers and two mixed drinks at another establishment before heading home. Wiltgen agreed to perform standardized field sobriety tests, but he began to report back and rib pain. Benning asked Wiltgen repeatedly whether Wiltgen wanted to be medically evaluated, but Wiltgen initially refused. Because of Wiltgen's reported pain, Benning asked Wiltgen to perform limited field sobriety tests, including the horizontal gaze nystagmus test and reciting the alphabet. Wiltgen also agreed to submit to a preliminary breath test which registered a breath alcohol level of 0.189g/100mL. Benning placed Wiltgen under arrest for operating a motor vehicle while intoxicated ("OWI").

¶6 Benning read to Wiltgen the Informing the Accused form, and Wiltgen consented to a chemical test of his blood, which yielded a result of 0.21g/100mL, higher than the 0.02g/100mL limit applicable to Wiltgen due to previous convictions for OWI. Wiltgen was charged with OWI as a fourth offense

and operating with a prohibited alcohol concentration ("PAC") as a fourth offense pursuant to WIS. STAT. §§ 346.63(1)(a), (b) and 346.65(2)(am)4.

¶7      As noted, during the court proceedings, Wiltgen filed numerous motions to suppress evidence on various legal grounds, only one of which is at issue here.  In that motion, Wiltgen alleged that Benning violated Wiltgen's right against self-incrimination, as protected by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution, by conducting an unlawful interrogation.  Wiltgen asserted that Benning had already made the decision to arrest Wiltgen before interrogating him, and that he intentionally delayed placing Wiltgen under arrest to avoid reading Wiltgen the *Miranda* warnings.[3]  Wiltgen sought to suppress all statements and other evidence derived from the alleged unconstitutional interrogation, including the results of the chemical test of Wiltgen's blood, under the exclusionary rule and the fruit of the poisonous tree doctrine as set forth by our supreme court under the circumstances in *Knapp*.

¶8      Due to the proximity to trial, which the circuit court declined to adjourn to a later date, the court determined that it would decide the motion based on its review of the body camera footage and the written submissions of the parties and only take additional evidence if requested by the State.  Neither party objected to the court's proposed method of considering and deciding the motion.  The court reviewed the parties' submissions and the audiovisual evidence, made findings of

---

[3] In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court concluded that the Fifth Amendment to the United States Constitution requires law enforcement to inform suspects prior to custodial interrogations of their right to remain silent, that anything they say may be used against them, and their right to have an attorney present.

fact based on the audiovisual evidence, and issued a written decision denying the motion.

¶9      Wiltgen pled no contest to operating a motor vehicle with a PAC as a fourth offense.  The circuit court found Wiltgen guilty of the offense and entered a judgment of conviction, in which the court withheld sentence and placed Wiltgen on 18 months of probation and stayed the sentence pending appeal. Wiltgen appeals the judgment of conviction.

## DISCUSSION

¶10      On appeal, Wiltgen argues that his right against self-incrimination under Article 1, Section 8 of the Wisconsin Constitution was violated and that the circuit court erred in denying his suppression motion.  Wiltgen asserts that the court erred in its factual finding that Benning did not commit a constitutional violation during his OWI investigation.  Specifically, Wiltgen asserts that the court did not consider the entirety of the facts known to Benning at the time of Wiltgen's alleged interrogation, including that Wiltgen had slurred speech, bloodshot eyes, an odor of intoxicants, and difficulty ambulating and that Wiltgen was involved in a serious motor vehicle accident.[4]  Wiltgen argues that the court's

---

[4] In support of his argument that the circuit court erred in not considering all of the facts known to Benning at the time of his questioning of Wiltgen, Wiltgen also alleges that all of these observations were made in the context of Wiltgen being subject to a 0.02g/100mL alcohol restriction.  However, Wiltgen does not allege or provide a record cite that Benning was aware of this restriction prior to his questioning of Wiltgen.  This court need not consider arguments that are unsupported by adequate citations to the record or are otherwise undeveloped, and we decline to do so here.  *See* **Dieck v. Unified Sch. Dist. of Antigo**, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (unsupported factual assertions).

(continued)

resulting findings of fact were incorrect and led the court to err in concluding that no unconstitutional interrogation occurred and in denying Wiltgen's motion to suppress evidence.

¶11 As we explain in greater depth below, Wiltgen's arguments about the circuit court's findings of fact and Benning's intent have no bearing on the dispositive issue in this case. An officer is not required to read *Miranda* warnings unless a defendant is in custody, and Wiltgen's appellate briefing does not meaningfully address the legal standard for custody. Based on the factual record, which is not subject to any reasonable dispute, we conclude that Wiltgen was not in custody at the time Benning questioned him. We therefore reject Wiltgen's arguments.

## I. Standard of Review and Governing Legal Principles

¶12 Both the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution provide that no person shall be compelled to incriminate themselves without the due process of law. *State v. Bartelt*, 2018 WI 16, ¶26, 379 Wis. 2d 588, 906 N.W.2d 684.[5] The constitutional

---

Wiltgen additionally refers to the circuit court's consideration of Benning's reference to the number "55" to dispatch during this incident. The court found that this reference did not indicate that Wiltgen was an intoxicated driver as Wiltgen alleges, but rather referred to Benning's police unit. On appeal, Wiltgen does not assert that this was an erroneous factual finding, and we do not address it further.

[5] The Fifth Amendment of the United States Constitution states that "[no person] shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." Article I, Section 8 of the Wisconsin Constitution states that "[n]o person may be held to answer for a criminal offense without due process of law." With exceptions, our supreme court has generally interpreted this provision of our state constitution consistent with the United States Supreme Court's interpretation of the Fifth Amendment. *State v. Ward*, 2009 WI 60, ¶18 n.3, 318 Wis. 2d 301, 767 N.W.2d 236.

right against self-incrimination requires that law enforcement officers inform suspects of their rights to remain silent and to have an attorney present during custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Because "*Miranda* and its progeny are aimed at dispelling the compulsion inherent in custodial surroundings," the *Miranda* safeguards apply "only to custodial interrogations under both the U.S. and Wisconsin constitutions." *Bartelt*, 379 Wis. 2d 588, ¶30 (citation omitted). When a person is subjected to a custodial interrogation, "[i]f the warnings are not given, any statements made are inadmissible in court." *State v. Halverson*, 2021 WI 7, ¶1, 395 Wis. 2d 385, 953 N.W.2d 847. Our supreme court has also concluded that "physical evidence obtained as the direct result of an intentional *Miranda* violation is inadmissible under Article 1, Section 8 of the Wisconsin Constitution." *Knapp*, 285 Wis. 2d 86, ¶83.

¶13 Determining whether a custodial interrogation occurred is the first step in an inquiry of whether statements and other evidentiary "fruits" were obtained in violation of *Miranda* and must be excluded from evidence. Here, this inquiry centers on whether, prior to Wiltgen's arrest, he was in custody and interrogated for purposes of *Miranda*. *See State v. Mosher*, 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998).

¶14 A determination of whether a suspect is in custody presents a question of constitutional fact that we review under a two-part standard. *State v. Jennings*, 2002 WI 44, ¶20, 252 Wis. 2d 228, 647 N.W.2d 142. The circuit court's findings of historical fact will generally be upheld unless the findings are clearly erroneous. *State v. Henderson*, 2001 WI 97, ¶16, 245 Wis. 2d 345, 629 N.W.2d 613. "[A] determination of custody for purposes of *Miranda* is a question of law that we independently review." *Bartelt*, 379 Wis. 2d 588, ¶25.

## II. The Application of *Miranda*

¶15     Wiltgen argues that all of his statements prior to his arrest and the physical evidence obtained as a result of his statements should be suppressed because he was unconstitutionally interrogated.   As explained below, this argument collapses because of several foundational cracks, including Wiltgen's misinterpretation of ***Knapp*** and the inapplicability of ***Miranda*** prior to Wiltgen's arrest.

### A.  Knapp is Distinguishable

¶16     Wiltgen's argument that the evidence should have been suppressed centers on ***Knapp***, which he asserts is on "all fours" with Wiltgen's circumstances.

¶17     In ***Knapp***, the arresting officer entered the defendant's apartment with a warrant for the defendant's arrest because of a parole violation.  ***Knapp***, 285 Wis. 2d 86, ¶¶6-7.  The officer indicated to the defendant through an interior door that the defendant needed to open the door because the officer had a warrant for the defendant's arrest.  ***Id.***, ¶7.  After entering the defendant's apartment, the defendant and the officer went into the defendant's bedroom so that the defendant could put on his shoes.  ***Id.***, ¶8.  The officer began asking the defendant about the clothes the defendant was wearing the previous night because, unbeknownst to the defendant, the defendant was a suspect in a murder which had occurred earlier that day.  ***Id.***  The defendant pointed to a pile of his clothes on the floor, which the officer seized.  ***Id.***  Included in the seized clothing was a sweatshirt, a portion of which contained human blood.  ***Id.***, ¶9.  The defendant was eventually charged with first degree intentional homicide, and he moved to suppress evidence, including the sweatshirt.  ***Id.***, ¶13.

¶18    At the evidentiary hearing on that motion, the officer testified that the defendant was in the officer's custody when they were in the defendant's apartment. *Id.*, ¶13. The officer also testified that he intentionally sought to interrogate the defendant without reading the defendant his *Miranda* rights in order to "seek[] information" about the murder and to "keep the lines of communication open" because the officer knew that, if he had *Mirandized* the defendant, the defendant might not make a statement. *Id.*, ¶¶13, 14. The motion was denied by the circuit court, and the issue eventually reached our supreme court. *Id.*, ¶15.

¶19    In the supreme court proceedings, the parties agreed that the sweatshirt was seized as a direct result of an intentional *Miranda* violation, and the sole legal issue that remained concerned whether the physical evidence that resulted from the intentional *Miranda* violation should be suppressed under either the Wisconsin or United States Constitutions. *Id.*, ¶20.

¶20    Our supreme court determined that, because of the intentional nature of the *Miranda* violation, combined with the strong need to deter such conduct in the future and to preserve judicial integrity, the physical evidence (*i.e.*, the sweatshirt) and the testimonial evidence that was obtained must be excluded from evidence under Article 1, Section 8 of the Wisconsin Constitution. *Id.*, ¶¶73, 79, 82, 83. Wiltgen argues for the same result here.

¶21    But *Knapp* is inapposite to the factual and legal issues here. To underscore, it was undisputed in *Knapp* that the defendant was in custody at the time the officer interrogated him. *Id.*, ¶¶13-14. We note that an arrest is not the sole event triggering custody under *Miranda*; a suspect can also be in custody for *Miranda* purposes if there is a "restraint on freedom of movement of the degree

10

associated with a formal arrest." *State v. Lonkoski*, 2013 WI 30, ¶6, 346 Wis. 2d 523, 828 N.W.2d 552 (citation omitted). Further, because the *Knapp* parties conceded that an intentional *Miranda* violation had occurred, the only issue in *Knapp* was whether the physical evidence that resulted from the violation should be suppressed under either the United States or Wisconsin Constitutions. *Knapp*, 285 Wis. 2d 86, ¶20.

¶22 There is no such concession here. The State's first argument in its response brief on appeal is that Wiltgen was not in custody prior to his arrest, and therefore *Miranda* warnings were not required. Wiltgen leapfrogs over this issue in his initial appellate briefing and addresses it only in his reply brief. For the following reasons, we conclude that Wiltgen was not in custody at the time the officer questioned him prior to his arrest. Therefore, *Miranda* was not triggered, and no unconstitutional interrogation of Wiltgen occurred.

**B. Wiltgen Was Not in Custody**

¶23 The first step in determining whether a person is in "custody" for the purposes of *Miranda* is whether, under the totality of the circumstances, "a reasonable person would not feel free to terminate the interview and leave the scene." *Lonkoski*, 346 Wis. 2d 523, ¶6 (citation omitted). Whether a person is in custody is an objective determination and can be established when there has been a "restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citation omitted). Relevant factors that we consider in a totality of the circumstances analysis include "the degree of restraint; the purpose, place, and length of the interrogation; and what has been communicated by the police officers." *Bartelt*, 379 Wis. 2d 588, ¶32. If we determine "that a reasonable person would not feel free to leave, we must then consider whether 'the relevant

environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Id.*, ¶33 (citation omitted).

¶24      Here, the only evidence of the pertinent interaction between Benning and Wiltgen considered by the circuit court in denying Wiltgen's motion was the body camera footage, and there is no dispute as to the accuracy of that footage from the time Benning arrived at the accident scene through Wiltgen's arrest. We therefore augment the court's written decision with the undisputed facts shown in the recording.

¶25      In considering the degree of restraint used, we consider "whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved." *Id.*, ¶32. The audiovisual evidence reveals that, besides the presence of another officer and additional police cars that can be viewed in the distance, there was no restraint used by Benning on Wiltgen prior to his arrest. The purpose, place, and length of the questioning also does not support a custody determination. The questioning happened not inside a police station or police car, but on the side of the road near the location of the accident. The purpose of the questioning was multi-faceted and was to determine the cause of the accident, whether an OWI had occurred, and whether Wiltgen needed medical attention. The entire duration of the interaction from the time that Benning opened Wiltgen's car door to the time of Wiltgen's arrest was relatively short, lasting approximately 27 minutes. In terms of what Benning told Wiltgen, Benning often expressed concern for Wiltgen's physical health and urged Wiltgen to undergo a medical evaluation. There were no verbal threats made or intimidating conduct displayed by either officer present.

¶26 To the extent that Wiltgen asserts that he did not feel free to leave, that was at least as likely due to the fact that his car was inoperable and Wiltgen's own knowledge of his impaired condition rather than a result of any action taken by the officers. The objective custody test we employ is based on whether a reasonable innocent person in the defendant's position would have felt free to leave, not the defendant's subjective viewpoint. *State v. Morgan*, 2002 WI App 124, ¶¶22-23, 254 Wis. 2d 602, 648 N.W.2d 23. Further, "it is law enforcement's conduct that determines whether a suspect has been taken into custody." *Bartelt*, 379 Wis. 2d 588, ¶51. Here, when considering the totality of the circumstances, we conclude that the actions by Benning and the other officer would not have led a reasonable innocent person to believe that the person was not free to leave. Any restraint on Wiltgen's freedom to leave was due to his own conduct, rather than the conduct of the officers. Because this determination is dispositive to the issue of custody, we do not consider whether the environment presented the same coercive pressures as a station house interrogation. *See Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive." (citation omitted)).[6]

¶27 In sum, we conclude that Wiltgen was not subject to an unconstitutional interrogation prior to his arrest because he was not in custody.

---

[6] Implicit in Wiltgen's argument that a constitutional violation occurred is the unsupported proposition that when an officer develops probable cause to arrest an individual, that arrest must be immediately effectuated and *Miranda* warnings administered. Besides *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, which we determine in the text is inapposite, Wiltgen cites no persuasive legal authority for this proposition, and we do not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped, including the lack of references to supporting legal authority).

## CONCLUSION

¶28     For the reasons set forth above, the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.