COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP1135-CR**

Cir. Ct. No.  2017CF612

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

RAYMOND R. LEWIS,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge.  *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Raymond Lewis appeals a judgment of conviction for delivery of cocaine, as a party to a crime.  Lewis argues that the circuit court

should have granted his motion to suppress evidence obtained through execution of a search warrant. Specifically, Lewis contends that the search warrant lacked probable cause after correcting for deliberate falsehoods and omissions in the warrant application. We conclude that, even after correcting for the claimed falsehoods and omissions, the warrant was supported by probable cause. We affirm.

*Background*

¶2      In June 2017, law enforcement sought a warrant to search Lewis's home. In support of the warrant application, a drug investigator with the City of La Crosse Police Department testified in a telephone call with the circuit court as follows. The investigator made contact with a confidential informant ("CI"), who advised the investigator that he could purchase cocaine and methamphetamine from Lewis. The investigator knew the CI to provide truthful information in the past when the investigator worked with the CI previously.

¶3      The investigator met with the CI at the police station and recorded a phone call between the CI and Lewis, during which they made plans to meet on the south side of La Crosse. The investigator searched the CI and did not locate any contraband, and the investigator provided the CI with $300 police recorded "buy money" and an audio/video recording device. The investigator then drove the CI to the south side of La Crosse. Other surveillance investigators witnessed the CI approach the residence at the "target location." The investigator heard the CI make contact with Lewis at that location on the recording device the investigator had provided him. About 25 minutes later, the CI left the location and made contact with the investigator. The CI turned over three small baggies of methamphetamine

and two small baggies of cocaine.[1] The investigator transported the CI to the police station where the investigator searched the CI and discovered another small baggie of methamphetamine.

¶4 The investigator viewed the video recording of the controlled buy and determined that the CI clearly received the drugs from Lewis as shown on the recording. The investigator also observed that a ten-year-old child and additional drugs were present in the residence.

¶5 The CI informed the investigator that the CI had observed Lewis with a handgun the previous week. The investigator also knew that Lewis was "out on parole" based on convictions for possession with intent to deliver cocaine and battery to a police officer that resulted from a prior execution of a search warrant. The circuit court found probable cause and issued a warrant to search Lewis's residence. The court also authorized a no-knock execution of the search warrant, citing the testimony as to Lewis's possession of a firearm, his prior conviction, that he was on supervision, and that a child was present in the residence.

¶6 Police executed the search warrant at Lewis's residence with a no-knock entry and recovered a handgun, methamphetamine, heroin, cocaine, and scales. Based on the search results, the State charged Lewis with multiple criminal offenses.

¶7 Lewis moved to suppress the evidence obtained through the execution of the search warrant. He argued that the testifying investigator deliberately omitted material facts and misrepresented other material facts when he testified in support

---

[1] The investigator described the baggies as "bindles," "corner baggies," or "small gem baggies."

of the warrant application. Lewis argued that, once those errors are corrected, the investigator and the CI lack any reliability, and the information they provided could not establish probable cause.

¶8    On May 6, 2021, the circuit court held a suppression hearing. At the hearing, the investigator who testified in support of the warrant provided the following further testimony related to the controlled buy. The investigator's first contact with the CI was in connection with this case, when he was contacted by representatives of another police department who advised him that the CI would be able to conduct a controlled buy from Lewis. The representatives of the other department informed the investigator that the other department had worked with the informant and that he was reliable. The other department's representatives informed the investigator that the CI had recently been arrested and was hoping to receive consideration for his cooperation with police. The investigator asked the CI if he was on probation and the CI stated that he was not. The investigator told the CI that, if he cooperated, the investigator would try to contact someone for the CI so that the CI could use his cooperation as leverage in sentencing.

¶9    When the investigator searched the CI at the police station after the controlled buy, he discovered the additional small baggie of methamphetamine inside a cigarette pack. The CI explained to the investigator that he was nervous and had forgotten to turn that methamphetamine over. While the CI told the investigator that he had observed Lewis with a black .45 caliber handgun at the house in which the controlled buy took place "within the week," the CI acknowledged that he had not seen this gun during the controlled buy.

¶10    The investigator was familiar with Lewis from a previous drug raid. The investigator knew that, during the execution of the prior search warrant, an

officer was injured while attempting to arrest Lewis, resulting in the officer needing to have surgery on his hand. However, when he testified in support of the warrant, the investigator had mistakenly believed that Lewis had been convicted of battery to an officer, when in fact the resulting conviction was resisting arrest, causing injury.

¶11 The investigator learned from the suppression motion that the CI had lied about his probationary status and in fact had been on probation and had a warrant for his arrest at the time of the controlled buy. The investigator stated that it was department policy to gather background information on a CI, but the background investigation would not usually include examining the CI's criminal history, so the investigator did not check the CI's criminal history prior to working with him.

¶12 The circuit court determined that the factual corrections asserted by Lewis would not have changed its decision regarding the warrant and therefore denied the motion to suppress.

¶13 Lewis pled no contest to one count of delivery of cocaine, as a party to crime, and the court sentenced him. Lewis appeals, challenging the circuit court's decision denying his suppression motion.

*Discussion*

¶14 "The Fourth Amendment of the United States Constitution guarantees that persons shall be secure from 'unreasonable searches and seizures and sets forth the manner in which warrants shall issue.'" **State v. Sveum**, 2010 WI 92, ¶18, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted). A constitutionally valid warrant requires "a demonstration upon oath or affirmation that there is probable cause to

believe that evidence sought will aid in a particular conviction for a particular offense ...." *Id.*, ¶20. A search warrant is supported by probable cause if the warrant-issuing judge "had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." *State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756.

¶15 Here, Lewis brought a *Franks/Mann* challenge to the validity of the search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (recognizing challenge to search warrant on claim that the warrant application included a false statement that was made deliberately or with reckless disregard for the truth, where the statement was necessary to finding of probable cause); *see also State v. Mann*, 123 Wis. 2d 375, 388, 367 N.W.2d 209 (1985) ("[A]n omitted fact [is] the equivalent of 'a deliberate falsehood or a reckless disregard for the truth'" if it is "an undisputed fact that is critical to an impartial judge's fair determination of probable cause." (citation omitted)). If a defendant establishes that the search warrant application included false information or omitted material information, either deliberately or with reckless disregard for the truth, the court must assess probable cause after that information is corrected. *See Franks*, 438 U.S. at 155-56; *Mann*, 123 Wis. 2d at 388-89. We independently review whether the warrant application establishes probable cause after *Franks/Mann* corrections. *See State v. Manuel*, 213 Wis. 2d 308, 315, 570 N.W.2d 601 (Ct. App. 1997).

¶16 Lewis argues that the testifying investigator omitted the following material information during the warrant application: (1) that the investigator failed to follow the police department policies to ensure the reliability of the CI, including conducting a background check; (2) that the CI lied about his probationary status; (3) that the CI had an extensive criminal background; (4) that the CI had an active warrant for his arrest; (5) that the CI had hidden the fourth baggie of drugs inside a

cigarette pack, supporting an inference that the CI had tried to hide those drugs from the police; (6) that the CI was seeking consideration for his pending criminal case, and the investigator told the CI that, if he cooperated, the investigator would try to contact the district attorney and tell him the CI provided helpful information; and (7) that the CI did not see Lewis possess a gun on the day of the controlled buy. Lewis also asserts that the investigator included the following false information in support of the search warrant: (1) that the investigator had worked with the CI in the past and found him reliable, when in fact the current controlled buy was the first time the investigator worked with the CI; and (2) that Lewis had a prior conviction for battery to an officer, when in fact his prior conviction was for resisting arrest, causing injury.

¶17 Lewis contends that, with the above information corrected, the warrant lacked probable cause. Lewis argues that, because the investigator withheld material information and presented false information, the investigator's testimony was insufficiently reliable and should have been afforded no weight by the warrant-issuing judge. Lewis contends that the CI also lacked any reliability and the information he provided should not have been afforded any weight, either.

¶18 Lewis contends that the recording of the controlled buy was also insufficiently reliable to establish probable cause for the search warrant. He argues that the investigator did not explain how he knew that the person in the recording was Lewis and that the CI was insufficiently reliable to identify him. He also argues that the quality of the recording was questionable because the investigator admitted that, when he reviewed the recording, he did not see the CI place the baggie of drugs inside a cigarette pack.

¶19    The State responds that Lewis has not shown that the investigator omitted any material information or offered any false information in support of the search warrant.  It then contends that, even if Lewis has made that showing, the warrant was supported by probable cause with any missing or false information corrected.  It contends that Lewis's argument that the investigator and the CI were entirely lacking in reliability—and that all of the information they provided should therefore be disregarded—misapplies the legal standard under *Franks*/*Mann*.  The State asserts that the proper test is whether, with the alleged omitted and false information corrected, the warrant is supported by probable cause.  *See Mann*, 123 Wis. 2d at 387.  It contends that Lewis has offered no legal authority for the proposition that this court should disregard all of the facts offered by the investigator in support of the warrant based on the alleged omissions and misstatements.  It contends that Lewis's arguments may reflect on to whether the investigator should have utilized the CI as an initial matter, but that that inquiry is not relevant to the determination of whether the search warrant was supported by probable cause.  It argues that the issue at this point of the proceedings is limited to whether, with the alleged omissions and misrepresentations corrected, the warrant is still supported by probable cause.

¶20    The State also disputes Lewis's contention that the recording of the controlled buy was unreliable.  It asserts that the investigator explained that he watched the recording and could see the CI receive the drugs from Lewis, and that the buy occurred at Lewis's residence following a recorded phone call with Lewis.  It asserts that Lewis's claim that identity is at issue defies logic and common sense.  It also asserts that it was reasonable that the recording device worn on the CI's body would not capture the CI placing a small baggie of drugs in a cigarette pack in his pocket.  It contends that, even accepting that the CI's credibility was called into

question, the recording of the controlled buy provided probable cause for the search warrant.

¶21    In reply, Lewis contends that the State is wrong that the reliability of the CI is not critical to this case. He contends that his argument does not reflect on whether the investigator should have utilized the CI in the first place but, rather, whether the investigator's testimony (and, in turn, the information the investigator received from the CI) was reliable given the investigator's disregard for departmental policies designed to ensure the reliability of CIs. He contends that the reliability of the investigator's testimony and his questionable use of an unreliable CI are relevant to our determination of probable cause. He contends that, under the legal standard identified by the State, the information provided by the investigator and the CI in the corrected warrant application was so unreliable that it did not provide probable cause.

¶22    We begin by assuming without deciding, for purposes of this opinion only, that Lewis has established that the investigator provided false information and omitted other material information in support of the warrant application, either deliberately or with reckless disregard for the truth. We conclude, however, that, with that information corrected, the warrant was supported by probable cause.[2]

¶23    First, we are not persuaded by Lewis's argument that, based on the investigator omitting material facts and offering false information, the investigator's testimony lacks any credibility and may not be considered in the probable cause analysis. As the State points out, Lewis has not provided any authority for the

---

[2] In his reply brief, Lewis argues that the State improperly cites to facts outside the warrant application as supporting probable cause for the search warrant. Our probable cause analysis is limited to the facts provided in support of the search warrant, as corrected in the ways that Lewis argues for.

proposition that this court should weigh the credibility of the investigator on appeal and disregard all of the information he provided. We also are not persuaded that the video recording cannot be considered because the investigator did not explain how he recognized Lewis or because he did not see the CI place a small baggie inside a cigarette pack. Rather, the facts offered by the investigator as part of the search warrant application, and which Lewis has not argued are false, remain part of the totality of the circumstances we consider in our probable cause analysis. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶24 We conclude that, with the corrections to the search warrant application as posited by Lewis, the search warrant was supported by probable cause. The facts in support of the search warrant continue to include the investigator's testimony that he arranged a controlled buy between the CI and Lewis; that he searched the CI, found no drugs, and provided the CI with buy money; that the investigator met with the CI at the police station and recorded a phone call between the CI and Lewis, setting up the controlled buy; that the investigator viewed the videotape recording and saw Lewis provide the drugs to the CI; and that the CI made contact with the investigator after the buy and turned over several baggies of methamphetamine and cocaine. Those facts are sufficient to establish probable cause for the search warrant. *See State v. Bruckner*, 151 Wis. 2d 833, 861, 447 N.W.2d 376 (Ct. App. 1989) (probable cause requires only a fair probability that evidence of a crime will be found at a particular place).

¶25 Because we conclude that the investigator's testimony as to the controlled buy—including the video recording of the drug transaction—established probable cause for the search warrant, we reject Lewis's contention that the CI's reliability is a significant factor in our probable cause analysis. That is, this is not a case where the CI provided information that depended on the CI's veracity. Rather,

as explained, we conclude that probable cause was established by the investigator's testimony as to the facts of the controlled buy that the investigator verified, including that the investigator was able to view the drug transaction on the video recording. Because that testimony was sufficient to support probable cause for the search warrant after the *Frank*/*Mann* corrections asserted by Lewis, the circuit court properly denied Lewis's motion to suppress the evidence obtained through execution of the search warrant.[3]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[3] Lewis also argues in his brief-in-chief that the circuit court erred by issuing a no-knock warrant. Specifically, he argues that the court erred by considering the presence of a child as a supporting factor, pointing out that the considerations for a no-knock warrant are whether the facts present a threat of violence or reason to believe that evidence will likely be destroyed. *See Wilson v. Arkansas*, 514 U.S. 927, 936 (1995). He also asserts that the CI's report that Lewis had possessed a gun the prior week did not support a no-knock warrant, both because the CI lacked reliability and because the CI did not see Lewis with a gun on the day of the controlled buy. However, in his reply brief, Lewis concedes the State's points that the no-knock execution of a search warrant does not require prior judicial authorization, *see State v. Henderson*, 2001 WI 97, ¶29, 245 Wis. 2d 345, 629 N.W.2d 613, and that the information known to police need only support reasonable suspicion that announcement would be dangerous or would allow for the destruction of evidence to support a no-knock execution of a search warrant, *see Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). Lewis then contends, however, that the facts known to police did not provide reasonable suspicion for the no-knock execution of the search warrant. He argues that, because the investigator sought a warrant for the nighttime, there would not have been issues present that typically occur during drug investigations. He also contends that it was unclear why the officers would have believed that knocking and announcing would have been dangerous based on the presence of a child. Lewis's claim that the no-knock execution of the search warrant was not supported by reasonable suspicion at the time of execution is both raised for the first time in reply and insufficiently developed. We do not address it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped arguments not considered); *Vermont Yogurt Co. v. Blanke Baer Fruit & Flavor Co.*, 107 Wis. 2d 603, 613, 321 N.W.2d 315 (Ct. App. 1982) (appellant's arguments must be developed in brief-in-chief).

11